## N. Y. COMMON PLEAS.

ANDREW W. BILLINGS agt. WM. SMITH O'BRIEN.

The purchase, by payment in advance, of the future earnings of the salaries of the officers or employes of the United States government, is *void* as against public policy.

It is also in direct violation of the act of congress of February 26, 1853.

*General Term, May,* 1873.

THIS was an appeal from a judgment of the district court, in the city of New York, for the third judicial district, rendered on the verdict of a jury against the defendant, for the sum of $76.51, and holding the defendant subject to arrest and imprisonment in case of non-payment of the judgment, pursuant to section fifty of the Laws of 1857.

The plaintiff was a "purchaser of public pay;" the defendant was an inspector of customs, in the employ of the government of the United States. The plaintiff had been in the habit of buying the pay of defendant and other employes of the custom-house and of the government of the United States since the year 1869. On the 2d day of September, 1872, he purchased a portion of the pay of the defendant for that month, paying him in advance. The defendant was to earn the pay, which was not payable until the 1st day of October following. There was no paper writing between the parties, either in the nature of a sale or an assignment of the pay, neither was there any evidence of any delivery of the subject-matter of the sale or assignment. The defendant, on the 1st October, collected the pay, and did not pay it to the plaintiff. The complaint was:

" Complaint for conversion of $58.31, collected as the agent of the plaintiff, on the 30th September, 1872." Exceptions

were taken by defendant's counsel on the trial to numerous admissions and refusals to admit testimony, to a denial of a motion to dismiss the complaint and to refusals of requests to charge the jury, which appear in the points of counsel and the opinion of the court.

GEORGE F. & J. C. JULIUS LANGBEIN, *for the appellant.*

I. The complaint should have been dismissed, because the contract was void, as being against sound public policy (*Stone* agt. *Lidderdale*, 1 *Anst. Rep.*, 533; *McCarthy* agt. *Gould*, 1 *B. & B. Reps.*, 387; *Davis* agt. *Duke of Marlborough*, 1 *Swanst.*, 74; *Flarty* agt. *Odlum*, 3 *T. R.*, 681–683; *Barwick* agt. *Reade*, 1 *H. Blk.*, 627; *Lidderdale* agt. *Duke of Montrose and Lord Mulgrave, Paymaster-Generals of the Army*, 4 *Y. R.*; *Stuart* agt. *Tucker*, 2 *W. Blackst. Reps.*, 1137; *Greenfell* agt. *Dean and Canons of Windsor*, 2 *Beav.*, 544; *Arbuckle* agt. *Cowtan*, 3 *Bos. & Pul. Reps.*, 321; *Jenkins* agt. *Hooper*, 19 *Barb.*, 435; *Collyer* agt. *Fallon*, *Turner's Reps.*, 459; *Wells* agt. *Forster*, 8 *Meeson's & Wellsby's Reps.*, 149).

That the contract was against the revenue regulations of the United States, and cited "*Regulations under Revenue and Collection Laws of the U. S.*, 1857, *sect.* 608, *p.* 328, *and sect.* 612."

That two intendments are obvious: 1st. That no person employed in the revenue shall receive compensation unless for services actually rendered; 2d. That the full amount of compensation so to be paid shall inure to his own *exclusive* use. *Per Secretary of the Treasury* GUTHRIE.

The public money is not to be diverted from its legitimate and appropriate object, when in the hands of a public agent for disbursement for services to employes of the government. *To state such a principle is to refute it. No government can sanction it; at all times it would be found embarrassing, and, under some circumstances it might be fatal to the public ser-*

vice (*Supreme Court of the U. S., January Term*, 1846, *Mc-Kean Buchanan* agt. *James Alexander ; Lord* ALVANLEY, *C. J., in Arbuckle* agt. *Cowtan*, 3 *Bos. & Pul. Reps.*, 321).

The contract between the plaintiff and defendant was for a violation of the contract between defendant and the United States, and did violate and impair the same. The government did not pay in advance, before the money was earned; the plaintiff paid it in advance, with the knowledge of the government. This is against public policy, as it tempts the employe to indolence and idleness, and defeats the policy and purpose of the United States in its contracts with employes. It also tends to give the purchaser of public pay an influence or power over the public employe, which is detrimental to the government and the public. Its tendency is towards corruption. Such a contract is a deception upon the government and a fraud upon the public which cannot be countenanced. The law will not permit dishonest views and practices by enabling an individual to acquire, through the medium of his deception, any rights or interests (*Newland on Contracts*, 352; *Chitty on Contracts*, 3d ed., 222; 1 *Fonbl. Tr. Eq.*, 3d ed., 66; 1 *Fonbl. Tr. Eq.*, 6th ed., 122, and notes ; 1 *Henry Black. Rep.*, 322, 327, 465).

The manner of the performance of the contract enters into the question of validity as to public policy (*Sedgwick* agt. *Stanton*, 4 *N. Y. ;* 4 *Kern.*, 291, 293).

Public policy is against any interference with public officers or their moral or political duties, or the natural effect of which is to induce a neglect of duty (*Kevi* agt. *Leeman*, 9 *Ad. & El., N. S.*, 371; *Wall* agt. *Charlock*, 8 *N. Y. Leg. Obs.*, 230; *Marshall* agt. *B. & O. R. R. Co.*, 16 *How. U. S.*, 314; *Wildy* agt. *Collins*, 7 *Md.*, 273; *Wood* agt. *McCann*, 6 *Dana*, 366; *Clippinger* agt. *Hepbaugh*, 5 *Watt. & Sergt.*, 315; *Norman* agt. *Cole*, 3 *Espin. Rep.*, 253; *Hartzfield* agt. *Golden*, 7 *Watts*, 159; *Kennett* agt. *Chambers*, 14 *How. U. S.*, 38; *Chitty on Contracts*, 664, 658, 659; *Denny* agt. *Lincoln*, 5 *Mass.*, 385; *Churchill* agt. *Perkins*, 5 *Mass.*, 541; *Dyer* agt. *Hutch-*

*ins*, 4 *Mass.*, 370; *Marshall* agt. *Gold*, 2 *Pick.*, 284, 291; *Nelson* agt. *Milford*, 7 *Pick.*, 28; 1 *Story Eq. Jur.*, sect. 209, and notes : *Newland on Contracts, p.* 157; *Fowler* agt. *Armstrong*, 4 *Wash. Cir. Rep.*, 297; *Chitty on Contracts*, 3d ed., 244; 11 *Wheat.*, 258; *Chitty on Contracts*, 10th ed., *p.* 730).

Such contracts are detrimental to the purity of public employes and the best interests of a republican form of government. A nicer distinction as to public policy should be taken under our government than in a monarchial form of government. The policy of our government is most liberal towards all mankind; we take emigrants from all nations, and they become citizens. The good and the bad come here, and they can become public officials. With such a liberal policy, there must be a strict counter-balance. The integrity of public officials and the good of the public must be watched with jealousy, and anything and everything which in the least tends to the detriment of the official, of his duty or employment, or of the public, should be at once struck down.

II. The salary of a United States official is not the subject of *sale*, not at least without the assent of the government (2 *Black. Com.*, 446; *Ross on Vendors and Purchasers, Law Lib., vol.*, 12; 2 *Kent Com.*, 5th ed., *p.* 625; *William* agt. *Berry*, 8 *How. U. S.*, 544; *Noy's Maxims, chap.* 42; *Shep. Touch.*, 244; *Webster's Dictionary*, " *Property*," " *Salary*," " *Money*," " *Commodity*," " *Thing* ;" *Pothier on Contracts of Sale, p.* 8; *Code of Procedure*, § 297; *Story on Sales*, 3d ed., 192).

III. There was no sufficient assignment to make a legal assignment. There was no delivery (2 *Kent Com.*, 3d ed., 434; 9th ed., 576, and 682, 684 and 685; 1 *Parson on Con.*, 4th ed., 197, 198; *White* agt. *Skinner*, 23 *Vt.*, 531; *Palmer* agt. *Merrill*, 6 *Cush.*, 282; *Tempest* agt. *Fitzgerald*, 3 *Barn. & Ald.*, 680; *Carter* agt. *Toussaint*, 5 *id.*, 855; *Dole* agt. *Stimpson*, 21 *Pick.*, 384; *Dickinson* agt. *Phillips*, 1 *Barb. S. C.*, 454; *Hoyt* agt. *Story*, 3 *Barb.*, 262; *Hare and Wallace*

Billings agt. O'Brien.

*Notes to Leading Cases in Equity*, vol. 2, part 2, p. 233; *Christmas* agt. *Griswold*, 8 *Ohio State R.*, 558).

IV. The plaintiff purchased only a part of the salary. A part of a chose in action cannot be assigned (*Gibson* agt. *Cook*, 20 *Pick.*, 15; *Mandeville* agt. *Welch*, 5 *Wheat.*, 286; *Palmer* agt. *Merrill*, 6 *Cush.*, 284; *Bullard* agt. *Bacon*, 1 *Gray*, 605; *Robbins* agt. *Bacon*, 3 *Greenl.*, 346, 350; *Gibson* agt. *Finley*, 4 *Maryland Ch. Decis.*, 75; *Rodick* agt. *Gandell*, 15 *Eng. Law and Eq.*, 222; *Mandeville* agt. *Welch*, 7 *Wheat.*, 277; *opinion of* WELLES, *J., in Field* agt. *Mayor*, 6 *N. Y.*, 2 *Seld.*, at p. 188).

V. None but a court of equity had jurisdiction to enforce the contract, if valid. A justice of a district court has no equity powers, and had no jurisdiction over the alleged assignment or sale (2 *Black. Com.*, 396, 397; *Breverton's Case*, *Dyer*, 306; *Coke on Littleton*, 232, 6 *N. O.*; *U. S.* agt. *Buford*, 3 *Pet.*, 30; *Chitty on Contracts*, 10th ed., 131 to 136, and 139; *Newland on Contracts*, 109, 122; *Field* agt. *Mayor*, 6 *N. Y.*, 2 *Seld.*, 179, 184, 187; *Mitchell* agt. *Winslow*, 2 *Story*, 630; *Langton* agt. *Horton*, 1 *Hare*, 549; 2 *Story Eq. Jur.*, §§ 1040 to 1055).

VI. That the transaction amounted in law merely to a loan of money, and the evidence showed this. It was a sale in the nature of a loan, and the discount taken by plaintiff being about twenty per cent, it was usury.

VII. The evidence does not make out a conversion, nor is this a case of conversion at all. It was a mere breach of trust. A principal cannot empower an agent to do what he himself cannot do. Plaintiff could not collect the salary, and could not empower defendant to collect it *for him*.

SAMUEL JONES & HOWARD ELLIS, *for respondent*.

I. That there was no statute of the United States rendering the assignment void (*Acts of congress of* 1846; 9 *U. S. Stat. at Large*, 41; *and the act of* 1853; 10 *U. S. Stat. at*

*Large,* 170 ; *Brightly Dig.,* 1789 *to* 1857, 132, *under the head of claims*), simply affect the relation of the parties to the government, and shall transfer no title, right, demand or claim against the United States, but for any such purpose shall be void and invalid. They do not go to the extent of affecting the relation between the assignor and assignee, nor do they make the assignment as between them void.

II. The pay was assignable ; there was a possibility coupled with an interest which was assignable (*Brackett* agt. *Blake,* 48 *Mass. R.* [7 *Met.*] , 335 ; *Mullville* agt. *Quinn,* 67 *id.* [1 *Gray*] , 105 ; *Gardner* agt. *Hoey,* 35 *id.* [18 *Pick.*] ,. 168 ; *Crouch* agt. *Martin,* 2 *Verm.,* 594 ; *Field* agt. *The Mayor,* 6 *N. Y.,* 179).

III. Whatever may have been the rule before the Code, whatever operated as an assignment according to the principles of equity, and would formerly have been upheld in a court of equity as an assignment, must now in ALL COURTS of this state be upheld and recognized as an assignment, and cited *sections* 69, 111, 64, 149, *sec.* 48 *of chap.* 344 *of Laws of* 1857 ; *Laws of* 157, *vol.* 1, 707.

The defendant, having collected the money, was bound to pay it over to the plaintiff. An action for money had and received (*Buel* agt. *Boughton,* 2 *Denio,* 91).

IV. The title to the money was in plaintiff. Defendant received the money as agent of plaintiff in a fiduciary capacity, and was liable to arrest (*Sec.* 16, *chap.* 344, 712, *vol.* 1).

V. The English cases as to public policy where the assignment of the pay was held void, the assignees were either army or navy officers, and were made to keep up the grandeur and dignity of the greatest nation on the earth,—Great Britain (*Greenfall* agt. *The Dean and Commons at Windsor,* 2 *Beavens,* 544). The doctrine has never been applied to mere subordinate clerks, book-keepers, carmen, &c., and was not recognized in *Crouch* agt. *Martin* (2 *Verm.,* 595), was regulated by *statute* (35 *Mass.,* 168). Defendant is in the public employment, but in no sense holds a public office.

The assignment* in question is but a single month's pay, and the paying of the month's wages at the *beginning* instead of the *end* of the month ; and that is, the whole transaction is not prejudicial to the recipient, or to the community, or contrary to public policy.

*By the Court,* ROBINSON, *J.*—This was an appeal from a judgment of the third district court, in an action brought "for money converted by the defendant to his own use, received by him as the agent of the plaintiff, to the amount of fifty-eight dollars and thirty-one cents." The answer was, *first,* a general denial ; and, *second,* that the transaction was void as against public policy. The plaintiff's business was that " of purchasing public pay and claims against the government." The defendant, at the time of this transaction (in 1872), was an inspector in the New York (U. S.) custom-house, whose pay was four dollars a day, payable monthly. On the case, as presented, it appears' the plaintiff had, on occasions previous to September, 1872, purchased or bargained for the purchase of defendant's monthly pay or salary, or some interest therein ; and on the second day of September fifty-five dollars and seventy-four cents being due him for an existing debt, he (as he testifies) bought of defendant his pay for the month of September, payable on the first of October, for the sum of sixty-one dollars and thirty-one cents. Defendant however, in October, collected the whole of his September salary, and only repaid the plaintiff three dollars on account ; so that plaintiff claims and has recovered fifty-eight dollars and thirty-one cents as and for the balance of his interest in those moneys.

The alleged transfer was not in writing, nor was any evidence of the claim or demand against the government accepted or received by the plaintiff, nor (so far as I can discover from the testimony) was any part of the purchase-money then, or at any time, paid as required by the statute of frauds (2 *R. S.,* 136, § 3). The transaction, as testified to, was entirely

by parol, and no act was shown conformatory of the contract. Error occurred on the trial and in rendering the judgment.

*First.* In denying defendant's counsel the right, on cross-examination, to elicit what transpired in the conversation that occurred when the transfer was alleged to have been made. To the inquiry of plaintiff, then on the witness stand, "What then took place?" he answered "I told Mr. O'Brien that I should expect a full settlement at the end of the month." Q. What did Mr. O'Brien say to you? A. He admitted that he would settle; I saw him in my office. Q. What did he say to you when he came in? A. He said that was all he could give me—five dollars; next he said that was the best he could do; that was on the sale of the month previous. Q. What did Mr. O'Brien say to you, and what did you say to him, when the transaction with regard to the alleged sale of the salary—of his salary as inspector in the custom-house? (Objected to; ruled out; exception.)

The effort of the defendant to elicit from the plaintiff the basis of his claim was futile, as his questions were evaded, and that directly pointing to the very transaction in dispute was excluded by the justice.

This was manifest error.

*Secondly.* He also erred in refusing to dismiss the case on the ground that, according to the plaintiff's evidence, he does (did) not make out a conversion of the money of the defendant according to the rules of law.

1*st.* No title by sale was proven within the statute of frauds (2 *R. S.,* 136, § 3, *sub.* 2 *and* 3).

2*d.* If shown it was only of a joint interest or share, but not of any moneys *exclusively* belonging to the plaintiff and received by the defendant as his agent. At most he would have a right to participate *pro rata* in any moneys collected for the month's salary and to an account, or to recover as for violation of an executory contract to collect the whole and pay plaintiff his proportion in respect to which in neither

aspect could any claim for *conversion of moneys* received in a fiduciary capacity be sustained.

*Thirdly.* The alleged sale by the defendant of his salary as a public officer, previous to its having been earned, was void as against public policy for the reason that such an act tends to diminish the responsibility, independence and integrity of the officer, and impair that singleness of purpose which his duty exacted.

So much of the doctrine of the English courts on this subject as is founded on considerations of upholding the dignity of the government or the state, or respectability of office growing or* the wealth or station of the officer, are undoubtedly applicable either to our condition of society or to any public policy incident to the simple forms and requirements of a republican government; that neither requires or recognizes any such aids to its dignity or estimation. It only exacts from its officers an honest and faithful devotion to the performance of their duties.

But, notwithstanding the difference in our government from that of England, from which we mainly derive our laws, and adopt, as by inheritance, the principles of justice that had there been recognized and established previous to our coming into existence as a nation, there yet remains in the considerations that influence the English courts in condemning the sale of the salary of a public officer, while accruing or before it became due, the important one first above stated, that it tended to impair the efficiency of the officer by diminishing his interest in the performance of his duties, and rendering him, to a great extent, the mere slave or servant of his creditor or assignee in working out a past debtor obligation.

In private transactions wages or other benefits expected to be earned or realized under a subsisting employment or course of dealing may be assigned (*Crouch* agt. *Martin*, 2 *Vern.*, 595 ; *Thayer* agt. *Kelly*, 28 *id.*, 20 ; *Hartley* agt. *Tapley*, 2 *Gray*, 567 ; *Taylor* agt. *Lynch*, 5 *id.*, 49 ; *Field* agt. *The*

*Mayor, &c., of New York*, 6 *N. Y.*, 179), but not such as are entirely indefinite and in expectancy under some possible future contract (*Emery* agt. *Lawrence*, 8 *Cush.*, 151 ; *Mulhall* agt. *Quinn*, 1 *Gray*, 105 ; *Munsell* agt. *Lewis*, 4 *Hill*, 635). A pension or salary accrued for past services may be assigned, but on grounds of public policy. One made or allowed to secure to the state the performance of future services or duties is inalienable (*Flarty* agt. *Odlum*, 3 *P. R.*, 681 ; *Stone* agt. *Lidderdale*, 2 *Ath.*, 533 ; *Davis* agt. *Duke of Marlborough*, 1 *Swan*, 79 ; *Cooper* agt. *Reilly*, 2 *Sim.*, 590 ; *Palmer* agt. *Bate*, 2 *Brod. & B.*, 673 ; *Hill* agt. *Paul*, 8 *Cl. & Fin.*, 307 ; *Story Eq. Jur.*, §§ 294, 1040 *d, to f ;* 1 *Pars. on Cont.*, 194), "it being contrary to the public policy of the law that a stipend to one man for future services should be transferred to another who could not perform them" (*Barwick* agt. *Read*, 1 *H. Bl.*, 627), "the reward being a consideration for some continuing duty or service" (*Wells* agt. *Foster*, 8 *Mees. & Wells.*, 148; and as Lord AVANLEY, C. J., says in *Arbuckle* agt. *Cowtan*, 31 *Bos. & Pul.* 328): "It is now clearly established that the half-pay of an officer is not assignable, and *unquestionably any salary paid for the performance of a public duty ought not to be perverted to other uses than those for which it is intended.*"

, This principle, accepted and adopted by judges STORY and PARSONS in their elementary treatises, I do not find innovated upon by any decisions of any courts of the United States, except that in *Brackett* agt. *Blake* (*8 Met.*, 335) it was held, in a contest between creditors, such an assignment of the salary of a city officer would prevail as against an attachment by a creditor after it became due ; and in *State Bank* agt. *Hastings* (15 *Wis.*, 75), where it was held by a divided court that such an assignment of the accruing salary of a judge was valid, notwithstanding his subsequent revocation or repudiation of the authority he had given for its collection by the assignee. In this case the prevailing opinion assumes that the doctrine of the English cases "was not applicable to the condition

Billings agt. O'Brien.

of society, or to the principles of law or of public policy in this country," and this was the reason assigned for disregarding them.

This conclusion is erratic and unsatisfactory, and furnishes no substantial ground for rejecting the authority of the long line of decisions referred to that establish the invalidity of the assignment of the accruing salary of a public officer, as against public policy, for the just and considerate reasons above stated ; but,

*Fourthly.* The alleged transfer was in contravention of the policy and within the prohibition of the act of congress of February 26, 1853 (10 *Stat.*, 170 ; *Dunlap's Laws U. S.*, 1367 ; 1 *Bright*, 132), which declares any transfer of any claim upon the United States, or any part or share therein, absolutely null and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses. "*After the allowance of* such claim, the *ascertainment of the amount* due and the *issuing of a warrant* for the payment thereof."

The right to collect the monthly salary of an officer under the United States government certainly can only accrue upon the occurring of some of the circumstances or conditions of its payment; and any assignment, in anticipation thereof, is declared *wholly void.*

The subject of the salary of its officer is entirely within the control of such laws as congress may pass in relation thereto ; and full force must be given to its enactments, without regard to such principles of the common law as might prevail in respect to assignment of private claims or demands.

For these reasons the judgment should be reversed.

All the judges concurred.