Owen, J.
I. The commissioners proceeded under section 929 Revised Statutes. This and the following sections to 950,inclusive, provide a complete scheme for the organization, management, and support of children’s homes. The requirement of section 929 that, before the submission of the question of the purchase of a site and the erection of buildings to the electors of the county, notice of such election shall be published four weeks in two or more newspapers of the county, was complied with.
Section 877 Revised Statutes provides that: “ Before the county commissioners purchase any lands, or erect any building or bridge, the expense of which exceeds one thou *315 sand dollars, they shall publish and circulate hand-bills, and publish in one or more newspapers of the county, notice of their intention to make such purchase, erect such building or bridge, and the location of the same, for at least four -consecutive weeks prior to the time that such purchase, building, or location is made; and they shall hear all petitions for, and remonstrances against, such proposed .purchase, location, or improvement (68 Ohio L. 103, § 19; 63 Ohio E. 32, § 2).”
The defendant maintains that the failure to'comply with the requirements of this section is fatal to the validity of the action of the commissioners, and a complete answer to the petition of the relator. It is conceded that the prpvisions embodied in this section by the revision of 1880, were originally limited to the purchase of lands for, and the erection thereon of, court-houses, jails, and county infirmaries, and the building of bridges. The act of which these provisions were a part related to this subject alone. The only change effected by the revision is that the words, “ as provided by this act,” which originally occurred between the words “ bridge ” and “ the expenses,” are omitted. It is contended that the codifying commissioners intended, by the omission of these words from the new section 877, to enlarge its operation. No such requirement of notice as is now found in this section was to be found in any of the provisions relating to children’s homes prior to the revision of 1880.
In Allen v. Russell, 39 Ohio St. 337, it is said : “ Where all the general statutes of a state, or all on a particular .subject, are revised and consolidated, there is a strong presumption that the same construction which the statutes received, or, if their interpretation had been called for, would certainly have received, before revision and consolidation, should be applied to the enactment in its revised and consolidated form, although the language may have been changed.” In Comm'rs v. Board of Public Works, Ibid. 632, it is said: “Particular and positive provisions of a prior act are not affected by a subsequent statute treating a subject *316 in general terms, and not expressly contradicting the provisions of the prior act, unless such intention is clear.”
As the chapter in which section 877 is found was a compilation and consolidation of numerous acts, the retention of the words “ as required by this act” would have been an absurdity. Their omission is accounted for upon other grounds than that of an intention to extend the application of the requirements of this section to subjects not originally within its operation. There is no warrant for the conclusion that, by the mere omission of these words, it was intended to apply section 877 to the provisions relating to children’s homes, which have been brought into the revision, also, without substantial change from their original form.
II. Was the auditor excused from issuing his warrant by the resolution of December 15th, in form rescinding the former order directing him to issue his warrant for the agreed purchase price of the farm? That the power of the commissioners to make and execute the contract for the purchase of the land of the relator was ample, is unquestioned. No considerations of public policy, fraud, or abuse of discretion are shown to have intervened to impair or qualify this power.
Before the attempted rescission of their former action by the commissioners, the proposition of the relator to sell his land had been accepted. The deed was duly executed and delivered, accepted by the commissioners, and by them delivered to the recorder to be recorded. Substantially and practically, possession had been delivered to and accepted by the commissioners. They had ordered the auditor to draw his warrant upon the treasurer for the'amount of the purchase-money. When this order was made, the power of the commissioners over the public funds was exhausted. In fact, every thing which either party to the contract could do toward its execution was accomplished. The right of the relator to his purchase-money was then complete. It was a right growing out of a contract which the other contracting party had abundant authority to make. It was unaffected by any considerations of fraud, imposi *317 tion, or failure of consideration. It was not in the power of the commissioners, by any act of theirs, to divest him of the right which had so vested in the relator, or to impair any of the contract rights or obligations which flowed from the transaction. This is practically conceded ; but it is maintained that the order directing the auditor to withhold his warrant impairs no contract right of the relator, but simply affects his remedy. This position is untenable. The order of the commissioners directing the auditor to draw his warrant on the treasurer in favor of the relator was the only means by which they could fully perform and execute the contract on their part. By this act their power over the subject of the contract was expended and the rights of the relator fixed. To recall or rescind their action in this behalf would be a substantial and serious interference with a most important contract right of the relator.
A statute of Indiana authorized the county commissioners to purchase a “tract of land” for an asylum for the poor. The board provided one tract, and then undertook to purchase another. It was held that, “wdien the board have .acted and provided a farm for the occupancy of the poor of the county, their legislative power on that subject is exhausted.” Hanna v. Comm’rs of Putnam Co., 29 Ind. 170. See, in support of the same general principle, Nelson v. Milford, 7 Pick. 18; Hall v. Holden, 116 Mass. 172; New Orleans v. Church of St. Louis, 11 La. An. 244 ; Appeal of Comm’rs, 57 Pa. St. 452 ; Western Sav. Fund Soc. v. Philadelphia, 31 Pa. St. 175; Indianapolis v. Indianapolis Gas Co., 66 Ind. 396; State v. Board of Education, 35 Ohio St. 368; State v. Hastings, 15 Wis. 75.
The case of Ex parte Black, 1 Ohio St. 30, is relied upon by the defendant as authority establishing the power of the commissioners to rescind their action ordering the auditor to issue his warrant in favor of the relator. The distinction between that case and the case at bar will be found, upon a thoughtful examination, to be marked. The commissioners of Hamilton county had, in pursuance of a special act authorizing it, entered into a contract with Milton H. *318 and Alfred M. Cook, partners, for the erection of public buildings for the use of the county. After the Cooks bad made substantial progress with the work, two of the commissioners, acting for the board, and without the assent of the third, ordered all work suspended. Black, the relator, who was the third commissioner, applied to this court for a writ of mandamus to compel the board of commissioners to proceed with the work.
The Cooks were not complaining. The writ was refused. Thurman, J., said: “Let the validity of the contract be assumed for present purposes, what claim does it give the relator to the writ he seeks? If any individual right has been violated by its breach, it is the right of the Cooks, and they ask for no mandamus. Were they to do so, it would possibly be a sufficient answer to say that they have no right under the contract to auy specific thing; that their whole compensation is to be in money; and that an action at law would afford them a plain and adequate mode of redress. But it is unnecessary to say what we would do were they the relators. It is sufficient that Black has no right to prosecute for them. . . . But it is said that this is to sanction a repudiation of the contract by the commissioners. It is not so. It is only to say that mandamus is not the proper remedy.” Why mandamus was not the proper remedy in that case, will be considered in another part of this opinion. The case is strong authority for the proposition that, in the present case, the contract rights of the relator must be faithfully and fully respected. That the rights of the Cooks under the contract could be impaired by the action of the commissioners is expressly repudiated. In that case the contract was but part executed. In the case at bar each party had done all that was in his power to perform it.
If we concede the right and power of the commissioners to change or modify their established plan for the erection of a home, still, as the contract with Manix was within their authority, and was fully performed, the title to the land, which is admitted to be good, became vested *319 in the county, and they were clothed with abundant capacity to convey it to any person and appropriate its proceeds to the purposes of a home. Taylor v. Binford, 37 Ohio St. 262. But no facts have been made to appear upon this hearing, which justified the commissioners in the attempt to revoke or rescind the acts which they had done in performance of their contract.
In The State v. Com’rs of Henry County, 31 Ohio St. 211, the defendants, under the authority of a special act, levied and collected part of the taxes necessary for the building of a bridge. They then abandoned the purpose of building the bridge, and declined to make further levies. It was held that they will not be compelled by mandamus, at the suit of tax-payers, to build the bridge or make further levies for that purpose. The soundness of this case and of Ex parte Black, supra, are unquestioned. But let it be supposed that, in either case, a contractor had performed his contract, and the commissioners had allowed him his stipulated compensation, and directed the auditor to draw his warrant ’ therefor, would it be claimed that the power to suspend or abandon the prosecution of the work involved the right to rescind or revoke their allowance to the contractor and direction to the auditor? Surely, a proposition so at war with the inviolability of contract obligations will not be seriously contended for. If we are right in this conclusion, it follows that the commissioners could not impair the plaintiff’s rights by the purchase of other lauds for the purposes of a home.
III. Is mandamus the proper remedy?
In Ex parte Black, supra, it is very clear that mandamus Would not lie in favor of the Cooks. Their claim was one for money, and the amount was unascertained. If their claim had been ascertained by a judgment of court or allowance of the commissioners, it would have become the plain duty of the auditor to issue his warrant for the amount; and upon his refusal, mandamus would have been the appropriate remedy to compel him. Section 1021 Revised Statutes. The Comm’rs of Putnam County v. Auditor of Allen *320 Co., 1 Ohio St. 322, is relied upon to sustain the position of defendant. In that case it was held that: “ Mandamus will not lie to compel the auditor of a county to draw an order on the county treasurer where the auditor has not the right to fix the amount to be drawn for, unless such amount has been ascertained and liquidated.” Caldwell, J., says: “ If the amount were fixed in the mode contemplated in the statute, or if it were liquidated by judgment, mandamus would be the proper remedy to compel the auditor to perform the ministerial act. of drawing the order; but until the amount is thus liquidated, we think the auditor can not be compelled to act; the time for his action has not arrived.”
It seems very clear that if an action at law would lie against the county for the agreed purchase price of the land, the only effect of such a proceeding would be to fix or determine the amount to which the relator is entitled. This has already been accomplished. After such a judgment it would still remain for the auditor to draw his warrant for the amount of it. Upon his refusal mandamus would clearly lie to compel his action. Such a proceeding would seem vain and idle. If the relator should invoke the remedy of specific performance, the commissioners could answer that they had already fully performed the contract on their part; and such answer would be abundantly sustained by the facts.
The defendant urges that another remedy for the relator is to apply for an order against the board of commissioners to vacate the entry of December 15th. If this entry was authorized, it is not easy to see how a court could order its vacation. If, on the other hand, it was unauthorized, it furnishes no excuse to the auditor for his refusal to obey the command of the first order.
It is not enough that the auditor may honestly entertain doubts concerning the propriety of the original order or the effect of the order of rescission. The light to a writ of mandamus to enforce the performance of an official act by a public officer depends upon his legal duty and not *321 upon his doubts. Ryan v. Hoffman, 26 Ohio St. 109. If his duty is clear, its performance will not be excused by his doubts concerning it, however strong or honest they may be. It is not doubted that it is competent for an auditor to defend against an application for mandamus to compel him to issue his warrant on the treasurer upon an allowance and order of the commissioners, by showing that the order was wholly unauthorized, and that the commissioners had no authority to make it. State v. Yeatman, 22 Ohio St. 546. It is enough to say that in the present case no fact is shown which impeaches the original order of the commissioners or excuses the auditor from obeying its command. His duty to draw his warrant in favor of the relator is clear.
That mandamus is the proper remedy to compel the performance of that duty is abundantly established by authority. Commissioners of Putnam Co. v. Auditor of Allen Co., supra; Ryan v. Hoffman, supra; Smith v. Comm’rs, 9 Ohio, 26 ; State v. Burgoyne, 7 Ohio St. 153; Comm’rs v. Hunt, 33 Ohio St. 169 ; State v. Board of Education, 35 Ohio St. 368; State v. Wilson, 17 Wis. 687, 694; State v. Auditor of Delaware County, 39 Ind. 272.
“ The drawing of a warrant for the payment of a demand or claim, which had been duly audited and allowed by the proper authority, is regarded as a duty of a purely ministerial nature, and hence properly falling within the scope of mandamus. And wherever the demand has been definitely ascertained as prescribed by law, and the duty is plainly incumbent by law upon a particular officer of drawing his warrant upon the treasury for the amount due, a refusal to perform this duty will warrant the interposition of the courts by mandamus.” High Ex. Rem., § 104.
IY. Other defenses were relied upon by the defendant, but as they rested upon averments of fact which the proofs failed to establish, they are not considered in this opinion.
Peremptory writ awarded.