## STEWART v. JESSUP.

CRIMINAL LAW.—*Obtaining Goods by False Pretence.*—*Crime Committed Outside of State.*—A person is not liable to conviction and punishment in this State for obtaining property by a false pretence, where the property has been obtained outside of this State, though the false pretence may have been made within this State.

From the Hamilton Circuit Court.

*D. Moss* and *T. J. Kane,* for appellant.

*C. A. Buskirk,* Attorney General, for the State.

BUSKIRK, J.—Stewart, the appellant, being confined in the jail of Hamilton county, was, upon a writ of *habeas corpus,* brought before the circuit court of said county. The appellee, in his return to said writ, stated that the appellant had been charged by affidavit filed before a justice of the peace of said county with obtaining possession of twelve horses by false pretences; that upon a preliminary examination before the said justice, he had been adjudged guilty, and required to give security in the sum of three thousand dollars for his appearance in the circuit court to answer said charge; that upon his failure to give such recognizance, he had been committed to the jail of said county; and that he held him in custody under and by virtue of the mittimus issued by the said justice of the peace. A transcript of the proceed-

ings before the said justice was filed with said return, including the said mittimus.

The cause was heard upon evidence adduced before the court, and such evidence is in the record by a bill of exceptions.    The material facts are these :

The appellant resides at Corry, in the State of Pennsylvania.    In June, 1874, he, in company with a man by the name of Johnson, came to Noblesville, to purchase horses. They employed John E. Kerr, who was engaged in that business, to assist them.    Two car loads were purchased and shipped to the city of New York.    Stewart left with the second car load of horses.    Johnson remained, and he and Kerr purchased and shipped a third car load of horses.    In the purchase of each car load of horses, Kerr endorsed for Stewart and Johnson for small sums, all of which were paid. Kerr testified that when Stewart was at Noblesville he represented that he, his mother, and brothers and sisters owned sixty thousand dollars of stock and property in the First National Bank of Corry, Pennsylvania.    Kerr then purchased with his own money, and in his own name, a fourth car load of horses, and notified Stewart thereof by telegraph, at the city of New York.    Stewart wrote him to bring the horses to the city of New York.    At Buffalo, Kerr met Johnson, upon whose advice he telegraphed Stewart when and where to meet him.    Upon his arrival in the city, he was met by Stewart, who informed him that he did not have the money to pay for the horses.    Four of the horses were sold to obtain money to pay the expenses of the shipment.    Kerr then sold the remaining twelve horses to Stewart for one thousand four hundred and forty dollars, upon thirty days time, and took his note therefor.    The note was not paid. Kerr testified that he sold the horses to Stewart upon credit, in reliance upon the representations made by him while in Indiana.

The conclusion at which we have arrived renders it unnecessary for us to consider and decide whether the facts proved, if they had all occurred in the State of Indiana, would

amount to the crime of obtaining the possession of property by false pretences. But see *Jones* v. *The State*, 49 Ind. 549, and *Keller* v. *The State, ante,* p. 111.

It is obvious from the evidence that Stewart obtained the possession of the horses in the State of New York. The crime attempted to be charged consisted in obtaining the possession of the horses, and that was accomplished in the State of New York. It can make no difference where the false representations were made, as they of themselves do not constitute any crime. They are simply the means by which the crime was accomplished. The question is therefore presented whether the appellant can be convicted and punished in this State for a crime committed within another state. It is settled by a well-considered case in this court, which is fully supported by the authorities therein cited, that he can not be so convicted and punished. We refer to the case of *Johns* v. *The State,* 19 Ind. 421. In that case the court say:

"It may be assumed, as a general proposition, that the criminal laws of a state do not bind, and cannot affect, those out of the territorial limits of the state.

"Each state, in respect to each of the others, is an independent sovereignty, possessing ample powers, and the exclusive right to determine, within its own borders, what shall be tolerated, and what prohibited; what shall be deemed innocent, and what criminal; its powers being limited only by the Federal Constitution and the nature and objects of government. While each state is thus sovereign within its own limits, it cannot impose its laws upon those outside of the limits of its sovereign power. Our own constitution has expressly fixed the boundaries of its sovereignty." See sec. 2, art. 14.

In this State there are no common law offences. All crimes and misdemeanors must be defined, and punishment therefor fixed, by statutes of this State, and not otherwise. 1 G. & H. 415; *Hackney* v. *The State,* 8 Ind. 494.

The legislature has not attempted to define crimes and fix

punishment for an offence committed outside of the limits of the State. It has provided, that "every person, being without the State, committing or consummating an offence by an agent or means within the State, is liable to be punished by the laws thereof, in the same manner as if he were present, and had commenced and consummated the offence within the State." Sec. 2, 2 G. & H. 391.

Under the above section, the offence must be consummated within this State. The appellant was, under section 726 of the code, 2 G. & H. 319, entitled to be discharged. There was not only a want of probable cause for his detention, but it was conclusively shown by the evidence of the prosecuting witness that he had committed no crime that was cognizable under the criminal laws of this State.

The judgment is reversed, with costs; and the cause is remanded to the court below, with directions to discharge the prisoner. The clerk of this court is directed to immediately certify this opinion to the court below.