[Filed February 6, 1888.]

[S. C. 16 Pac. 434.]

CAMERON H. KING, Petitioner, v. JOHN J. HAWKINS, Auditor, Respondent.

1. PUBLIC OFFICERS—ASSIGNMENT OF UNEARNED SALARY.—An attempted assignment by a public official of his unearned salary is void as against public policy.

2. POWER OF ATTORNEY—AUTHORITY TO RECEIPT FOR WARRANT—CANNOT BE ASSIGNED.—An instrument in the nature of a power of attorney authorizing a certain party to receipt for warrant cannot be assigned. *Quaere:* If it contained words of negotiability would it be transferable?

3. PUBLIC OFFICERS — EARNED SALARIES — PROTECTION OF AUDITOR.—

As a matter of public policy assignments of officials' *earned* salaries ought to be regarded as void, especially for the protection of auditing officers, who should only be compelled to draw his warrant to the officer named in the statute.

Petition for alternative writ of mandamus.    Granted.

The facts are stated in the opinion.

Cameron H. King, in persona, for petitioner.

Wilson and Norris, for respondent.

WRIGHT, C. J.—The petitioner, Cameron H. King, is the commissioner of immigration of this territory.    As such, he is entitled to a salary of $2,000 per year.    The defendant, in his answer and response, sets up a contract entered into by the petitioner and one Thomas E. Farish, prior to the thirty-first day of December, 1887,—the time when said petitioner's last quarterly salary accrued,—by which, for a valuable consideration, said petitioner, King, sold and assigned said quarterly salary to the said Farish.    The exhibits filed with said answer and response do not show any assignment by King to Farish; but the following paper was filed therewith:

"Phœnix, Arizona, December 31, 1887.
*"Territory of Arizona to Cameron H. King, Dr.*

"For salary as commissioner of immigration for the quarter ending December 31, 1887, $500.00.

"Received payment.                    Cameron H. King.

*"Territorial Auditor:*    Please draw warrant for above in favor of E. H. Hiller, who is authorized to receipt for me.
                                        Cameron H. King."

On the back of this instrument are the words: "Without recourse.    E. H. Hiller."

It is to be observed that the above order upon the auditor directs him to draw his warrant for the quarterly salary due King, in favor of E. H. Hiller, and no one else.    It is in the nature of a power of attorney to the said Hiller, authorizing him to receipt for the warrant.    This power was

perhaps revocable by King at any time before the rights of third parties intervened. It is fundamental that an instrument such as this must have negotiable words on its face, in order to make it susceptible of transfer. If it wants these negotiable words, it cannot be negotiated or transferred so as to enable the assignee to sue upon it in his own name. It was a delegation of power to Hiller, without authority to Hiller to empower another to act for him. Would a general draft upon the auditor to draw his warrant for the salary in favor of E. H. Hiller or order have been negotiable? It is certain that such a draft, drawn against a contingent public fund, is not negotiable. There are no words upon the face of this instrument which show that it was the intention to give it an assignable or transferable quality.

The main question, however, in this case, and the one absolutely fatal to the defendant's side, is that the contract set up in the answer and response is void, as against public policy. In the answer and response is the following language: "Defendant, further responding, says that he is informed and believes, and therefore charges the fact to be, that said order, account, and receipt of payment of same was by said King executed and delivered by him to said Thomas E. Farish in payment of consideration arising out of contract in favor of said Farish for the amount of $500; said contract having been entered into by and between said King and said Farish *prior* thereto." The truth is plainly inferable from the record herein that the commissioner of immigration, prior to the thirty-first of December, 1887—the time when his quarterly salary in question accrued,—attempted, by way of anticipation, the assignment of said salary, before it was due, first to E. H. Hiller, and afterwards, as it is claimed, to Thomas E. Farish. We entertain no doubt that both attempted assignments were void, as against a well-established rule of public policy. With the private equities and *bona fides* between the parties, of course, we have nothing to do. The paramount object of good government is to secure efficiency in the public service; and a good government will do its part whether the officer does his or not. To this end, those

engaged in its public service are protected to the extent that the funds designed and set apart to compensate for the public service are not amenable to the ordinary laws of business. They cannot be taken on execution or attachment; nor will the officer, by any act of his, be permitted to make them available to strangers. The ground of the rule is the necessity of securing the efficiency of the public service, and it proceeds upon the philosophic theory that a public officer will be all the better prompted to a faithful discharge of duty when that duty is coupled with a material interest. Mr. Justice Johnson, in *Bliss* v. *Lawrence,* 58 N. Y. 442, 17 Am. Rep. 273, lays down the rule very clearly, as follows: ''It is true that, in respect to officers removable at will, this evil could in some measure be limited by their removal when they were found assigning their salaries; but this is only a partial remedy, for there would still be no means of preventing a recurrence of the same difficulty. If such assignments are allowed, then the assignees, by notice to the government, would on ordinary principles be entitled to receive pay directly, and to take the place of their assignors in respect to the emoluments, leaving the duties as a barren charge to be borne by the assignors. It does not need much reflection or observation to understand that such a condition of things could not fail to produce results disastrous to the public service.'' The welfare of society, good morals, the public conscience, good government, all require that the public service be efficient, clean, and untainted; hence the sound policy of the law is to remove every obstacle, the slightest hinderance, in the pathway of a public officer's scrupulous and faithful discharge of duty.

Now, we are aware that in *Bank* v. *Hastings,* 15 Wis. 78, different views are expressed from those herein; but that case seems to stand alone. The court there justifies its dissent from the current opinion in England on this subject on the ground that the condition of things in the one country has no application to the condition of things in the other. It is not perceived, however, why the efficiency of the public service is not as essential, and the reasons just as strong, in support

of a public policy which prohibits trafficking in the unearned salaries of public officers in this country as in that. The case of *Bank* v. *Hastings* was expressly disapproved in the leading case of *Bliss* v. *Lawrence*, already cited, (see *supra*,) and was also disapproved in *Bangs* v. *Dunn*, 66 Cal. 72, 4 Pac. Rep. 963. We much incline to the opinion that, in a large measure, the same reasons which make the assignment of public officers' unearned salaries void, as against public policy, ought to apply to the assignment of such officers' *earned* salaries; and this, especially, for the protection of the auditing officer. Suppose, as in the case at bar, A., a public officer, assigns his salary, first to B., then to C., and finally comes in and claims the warrant himself, and asks a mandate that the auditor draw and deliver the warrant to him. In the mean time, the auditor has drawn his warrant to the second assignee, not knowing but what he was the first. Has not the officer come uncomfortably near incurring personal liability? It would be a safe and sound policy which would compel the auditor to draw his warrant only to the public officer named in the statute. The auditor would then be free from doubt, and could act with safety.

As the record shows the warrant has already been drawn in favor of the petitioner, it is ordered that a mandate issue to the auditor, the defendant herein, that he deliver said warrant to the petitioner, Cameron H. King.

Barnes, J., concurs. Porter, J., concurs in decision.