THE STATE v. WILLIAMSON, *Appellant*.

Division Two, November 21, 1893.

1. **Public Officer:** CONTRACT FOR SALE OF UNEARNED SALARY: PUBLIC POLICY. A contract by a public officer for the sale and collection of his unearned salary is against public policy, and void.

2. ———: ———: ———: EMBEZZLEMENT. Such contract being void, the officer making it will not be guilty of embezzlement because of collecting the salary as agent of the party with whom he contracted and converting it to his own use, since the void contract did not divest him of the right to collect for himself and in his own right.

*Appeal from Jackson Criminal Court.*—HON. JOHN W. WOFFORD, Judge.

REVERSED.

*L. F. Bird* and *A. F. Smith* for appellant.

(1) The contracts in question were in contravention of the United States Statutes. Revised Statutes, United States, secs. 3477, 3737; *United States v. Gillis,* 95 U. S. 407; *Erwin v. United States,* 97 U. S. 392; *Spofford v. Kirk,* 97 U. S. 484; *Goodman v. Niblack,* 102 U. S. 556; *Bailey v. United States,* 109 U. S. 432; *Railroad v. United States,* 112 U. S. 733; *Hobbs v. McLean,* 117 U. S. 567; *Freedman v. Shepherd,* 127 U. S. 494; *Butler v. Goreley,* 146 U. S. 303. (2) The contracts were void, being executed as security for a usurious claim. Laws of Missouri, 1891, p. 170; *Loan and Trust Co. v. Baker,* 2 Mo. Leg. News, 603. (3) The assignment was void under the rule of public policy that a public servant cannot assign his unearned pay. *Beal v. McVicker,* 8 Mo. App. 202; *Bliss v. Lawrence,* 58 N. Y. 442; *Schwenk v. Wyckoff,* 46 N. J. Eq. 560; *Field v. Chipley,* 79 Ky. 260. (4) Section 3549, Revised Statutes, under which the defendant was convicted, provides that the embezzled property must come into the defendant's possession "by virtue of his employment or office." It did not so come into Williamson's possession.

*R. F. Walker,* Attorney General, *Marcy K. Brown,* Prosecuting Attorney, and *J. J. Williams,* Assistant Prosecuting Attorney, for the state.

(1) Section 3737, United States Statutes, prevents the assignment of a contract, and, therefore, is wholly immaterial here. *Hobbs v. McLean,* 117 U. S. 567.

Section 3477 declares the assignment of any claim against the United States to be null and void. *Spofford v. Kirk,* 97 U. S. 484, is the decision which appellant and his confreres expected to save them from the certain punishment they would meet if not employees of the United States. But the force of that decision has been, as to the point in this case, totally impaired. In sustaining and applying the statute in question, that decision laid down its propositions too broadly. *Goodman v. Niblack,* 102 U. S. 556; *Bailey v. United States,* 109 U. S. 432. As a matter of fact, the supreme court holds that statute to mean, not that the assignment is "absolutely null and void," but that it is voidable at the option of the government or its officers. *Bailey v. United States,* 109 U. S. 432. Where the government has recognized an assignment, the parties to it cannot claim that it is invalid. *Goodman v. Niblack, supra; Bailey v. United States, supra; Savings Co. v. Shepherd,* 127 U. S. 505. The reasoning of *Banks v. Hastings,* 15 Wis. 78, seems conclusive against defendant. There is no question of usury in the case. (2) Even if the assignment was illegal because against the statute referred to, or against public policy, or both, nevertheless if the money came into defendant's hands by virtue of his agency, and he converted it to his own use with intent to deprive the owner of it, he is guilty of embezzlement. The illegality of the transaction is no defense. *State v. Shadd,* 80 Mo. 358; *State v. May,* 20 Iowa, 305; *Com. v. Cooper,* 130 Mass. 285; *Com. v. Rourke,* 10 Cush. 397; *State v. Turney,* 81 Ind. 559; Dunlap's Paley's Agency, 62. The right by suit at law to collect debts contracted in an illegal traffic may be forfeited, but money received in such traffic is still property which the law protects against wrongdoers. *Commonwealth v. Smith,* 129 Mass. 111. Though the law would not

have assisted Mulholland by enforcing the payment to him by the government of the account assigned, still, when that money was paid to his agent, such agent can have no pretense to retain it. *Express Co. v. Lucas*, 36 Ind. 369. The defendant admits that he collected the money with the intent to convert it to his own use, with intent to deprive the owner thereof absolutely.

BURGESS, J.—At the January term, 1893, of the Jackson criminal court, the defendant was indicted, charged, under the first count, as agent of John Mulholland, with embezzling the sum of $107; under the second, with grand larceny of the same sum. At the same time he was arraigned and entered his plea of not guilty, and the cause was continued until the April term, 1893.

At said April term he filed a demurrer to the indictment, which was by the court overruled, whereupon he was tried, convicted, and his punishment assessed at imprisonment in the penitentiary for a term of two years. After unsuccessful motions for new trial and in arrest he appealed to this court.

The facts in this case are that, in November, 1892, the defendant was employed as a mail carrier in the postoffice department at Kansas City, Missouri, at a salary of about $107 per month. November 30, 1892, defendant sold to John Mulholland the salary he would earn for the month of December for $100, giving an order to Mulholland on the postmaster for that sum. Then, to prevent the postmaster from learning of the loan, Mulholland appointed defendant his agent to collect the same. Defendant afterward sold the same salary to other parties, and when it became due collected it from the government and refused to pay it over to Mulholland.

The contract between the defendant and Mulholland, which was read in evidence by the state, is as follows:

"KANSAS CITY, MISSOURI, November 30, 1892.

"*Mr. F. B. Nofsinger, Postmaster.*

"For value received, I have this day assigned and sold to John Mulholland the amount due me for labor performed or to be performed during the month of December, 1892, in carrier department, and said Mulholland is authorized to execute such receipts as you may require, and also to endorse warrant (or check) in my name. I further state that I have no cause to believe that I will not earn the salary so sold and have no indication or knowledge of being discharged. I also agree that it is a part of this contract, that if for any reason I fail to earn full salary of $——, that this assignment and order for warrant (or check) shall continue in full force for the month of ——, 189—, and until said amount of $—— has been earned. I read the above before signing.

"Respectfully,

"J. A. WILLIAMSON."

The vital question in this case and the one upon which this prosecution and conviction must stand or fall is as to the validity of the contract between the defendant and Mulholland. If the contract was void because against public policy, then the defendant must be discharged, not being guilty of any criminal offense under the statute.

It will be observed in the outset that the contract was for the sale of the unearned salary of defendant as mail clerk in the United States postoffice at Kansas City, Missouri, for the month of December, 1892. The 'rule of law is well established in England that such contracts are absolutely null and void as being against public policy. This subject was under review in the

case of *Bliss v. Lawrence*, 58 N. Y. 442, where all the authorities, both English and American were reviewed, and it was held that the assignment by a public officer of the future salary of his office is contrary to public policy and void.   See, also, *Schwenk v. Wyckoff*, 46 N. J. Eq. 560; *Field v. Chipley*, etc., 79 Ky. 260; *Bell v. McVicker*, 8 Mo. App. 202.

It will also be observed that in the cases of *Brackett v. Blake*, 7 Metcalf, 335; *Mulhall v. Quinn*, 1 Gray, 105, and *Macomber v. Doane*, 2 Allen, 541, which are sometimes referred to as announcing a different rule, the point of public policy was not considered by the court in either of them, but that the questions involved in them were regarded as relating altogether to the sufficiency of the interest of the assignor in the future unearned salary to distinguish the cause from those of attempted assignment of mere expectation, such as those of an expectant heir.   The court held in these cases, the expectation of future unearned salary being founded on existing engagements and contracts of employment, was capable of assignment, and that the existing interest was sufficient to support the transfer of the future unearned salary.

The case of *State ex rel. v. Hastings*, 15 Wis. 75, seems to announce a somewhat similar rule, but as in that case the order for the unearned salary, with authority to collect the same, had been transferred to an innocent purchaser, the case turned principally on the question of estoppel.   The question as to whether or not the assignment of the unearned salary was against public policy, was not raised or discussed in that case, either.

The reason of the rule is that the public service may not be so good and efficient when the unearned salary has been assigned as when it has not been, and "that the public service is protected by protecting

· those engaged in the performance of public duties,"
and this, not upon the ground of their private and
individual interest, but that of the necessity of securing
the efficiency of the public service by seeing to it that
the funds provided for its maintenance should be
received by those who are to perform the work at such
periods as the law has appointed for their payment.
*Bliss v. Lawrence, supra.*

If an officer can assign his unearned salary for a
month, he can, of course, assign it for a year, or
longer, and it will hardly be contended in such case
that he would be as efficient and diligent as if he were
to receive his salary in person or for his own benefit as
it became due.   For these reasons we think the con-
tract for the sale and collection of the unearned salary
of defendant void and of no effect, being against
public policy.

It is, however, contended by the attorney general
for the state that, even admitting that the assignment
was void, yet, as defendant collected the money for and
as the agent of Mulholland, he is guilty of the crime
for which he stands convicted, and cites as sustaining
this position, *State v. Shadd*, 80 Mo. 358;  *Com. v.
Cooper*, 130 Mass. 285;  *Com. v. Rourke*, 10 Cushing,
397; *State v. Tumey*, 81 Ind. 559, and Dunlap's Paley's
Agency, 62.   An examination of these authorities will
show that they were all cases where the money or prop-
erty which the defendants were charged with stealing
or embezzling as agents was where the transaction out
of which they grew and the money paid were illegal;
and the law in such cases is that if money has actually
been paid to an agent for the use of his principal, the
legality of the transaction, of which it is the fruit, does
not affect the right of the principal to recover it out of
the agent's hands nor divest him of his right thereto.
But no such state of facts exists in the case at bar.

Here the salary was legally earned and to be earned, but the attempted assignment thereof was void. The defendant, then, was never divested of his right to collect for himself and in his own right, and was not the agent of Mulholland in so doing. If there was no assignment, and we hold there was none, he was not the agent of Mulholland, but acted for himself in collecting the money.

As for the morals of the transaction, in so far as the defendant is concerned, they are certainly not to be approved or commended; but dishonest and dishonorable conduct does not always constitute a criminal offense.

There are other questions raised by counsel for defendant in their brief; but, as the result reached necessarily results in a reversal of the judgment, it is not thought necessary to pass on them. The judgment will be reversed and defendant discharged. All concur.