MARK L. BOZARTH v. STATE.

No. A-8733.   Oct. 12, 1934.
Rehearing Denied Feb. 26, 1935.
(41 Pac. [2d] 924.)

Earl Foster, Gomer Smith, and A. N. Boatman, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Oklahoma county of obtaining property under false pretenses, and was sentenced to pay a fine of $500.

A brief statement of facts will make clear defendant's contention. In 1931 he was district judge of the district including Okmulgee county. As such officer he was due from the state a monthly salary of $416.66. He was indebted to a Henryetta bank, and made arrangements with the bank for payments of $50 per month out of his salary as it became due from month to month. On September 12, 1931, he directed the state auditor, by a blanket assignment, to mail salary warrants due each month to the bank at Henryetta. This arrangement was rejected by the state auditor for the reason compliance would require the issuance of two warrants each month. Then defendant made a further arrangement and delivered to the bank 36 claims for monthly salary, with an assignment thereon, with the understanding that the claims for salary and the assignments were to be authenticated by a notary and sent to the auditor each month; that upon receipt of warrants the bank would deposit to defendant's credit, less the amount to be retained by it on defendant's indebtedness.

This arrangement was carried out; the claims and assignments were completed, sent to the auditor each month, warrant issued and returned to the bank, which then deposited the amount to defendant's credit, less payment made on the bank indebtedness. On September 20th, the auditor received claim and assignment for September salary. He issued a warrant thereon, and sent it to the bank. Five days later the auditor received a claim for September salary direct from defendant. This double claim was detected by the auditor, who considered it an error, and warrant was not issued. On October 23d, he again received claim and assignment from the bank, and issued a warrant in full for defendant's October salary. A few days later a claim for October salary was received direct from defendant, the duplication was not detected, and a second warrant for the full amount was issued to defendant. The defendant checked out of the Henryetta bank the exact amount deposited by it to his credit on the first warrant. A double payment of defendant's salary was made for November and December in the same way as in the case of the October salary, and the amounts deposited to defendant's credit by the bank on the warrants issued to it were checked out by defendant.

For January and February, 1932, warrants were issued by the auditor to bank on the assigned claims, but for both said months defendant also made direct claims which were detected by the auditor and warrants not issued.

The prosecution is based on the salary claim sent direct from defendant for December, 1931, in which, among other things, the affidavit states that the state was justly indebted to him "after allowing all just credits, in the sum of $416.66." In March, 1932, after an investigation, de-

fendant paid back to the state the sum of $1,248 as excess salary payments.

On the facts detailed, which are not controverted, only two contentions are made: First, no crime was actually committed; second, if a crime were committed, the venue thereon is not in Oklahoma county.

Under the first it is urged that to constitute the crime charged, it is essential the accused made some affirmative false representation; that a failure to disclose the entire truth is not sufficient, that is, defendant's failure to disclose to the auditor when filing his claim that he had theretofore made an assignment to the bank was a mere silence and not an affirmative false representation; that the claim and representations therein were in fact true; that the salary was due him. Further, that the assignment of an official's unearned salary is void—citing 5 C. J. p. 872, art. 42c, Note 71; State v. Williamson, 118 Mo. 146, 23 S. W. 1054, 21 L. R. A. 827, 40 Am. St. Rep. 358; McGowan v. City of New Orleans, 118 La. 429, 43 So. 40, 8 L. R. A. (N. S.) 1120, 10 Ann. Cas. 633; King v. Hawkins, 2 Ariz. 358, 16 Pac. 434; Nelson v. Townsend (Mo. App.) 111 S. W. 894; Bangs v. Dunn, 66 Cal. 72, 4 Pac. 963; Willis v. Weatherford Compress Co. (Tex. Civ. App.) 66 S. W. 472.

To constitute the crime charged there must have been some affirmative false representation at the time of filing claim for December salary. The claim affirmatively states:

"I, Mark L. Bozarth, the undersigned, upon oath, do depose and say that I have full knowledge of the above and foregoing account; and that the said account is just, correct, due and according to law and that the amount claimed after allowing all just credits, is now due and wholly unpaid, and that I am duly authorized to make this affidavit, so help me God.

"[Signed]  Mark L. Bozarth, Claimant."

That this statement was false is obvious, for at that time defendant had received an overpayment of salary in the sum of $833.32, which overpayment, to say the least, was a credit against the salary due him from the state.

It is not necessary this court decide whether or not the assignment of an official's unearned salary is invalid. The authorities are divided. 3 C. J. p. 872, art. 42; State v. Williamson, 118 Mo. 146, 23 S. W. 1054, 21 L. R. A. 827, 40 Am. St. Rep. 358; McGowan v. City of New Orleans, 118 La. 429, 43 So. 40, 8 L. R. A. (N. S.) 1120, 10 Ann. Cas. 633; King v. Hawkins, 2 Ariz. 358, 16 Pac. 434; Nelson v. Townsend (Mo. App.) 111 S. W. 894; Bangs v. Dunn, 66 Cal. 72, 4 Pac. 963; Willis v. Weatherford Compress Co. (Tex. Civ. App.) 66 S. W. 472; 5 C. J. 873; Schloss v. Hewlett, 81 Ala. 266, 270, 1 So. 263. But whether the assignment is invalid or not, by use of it the bank collected defendant's salary and with the agreed deduction passed it to his credit, and the knowingly received and appropriated it. Under such circumstances he cannot successfully contend that the claim and assignment delivered by him to the bank was invalid.

On the second contention, the question of venue, defendant argues that the claim and affidavit in support was made and the money received by him in Okmulgee county, which fixes the venue in that county, and not Oklahoma county—citing 11 R. C. L. page 854; Com. v. Schmunk, 207 Pa. 544, 56 A. 1088, 99 Am. St. Rep. 801; Stewart v. Jessup, 51 Ind. 413, 19 Am. Rep. 739; Barton v. People, 135 Ill. 405, 25 N. E. 776, 10 L. R. A. 302, 25 Am. St. Rep. 375; Bates v. State, 124 Wis. 612, 103 N. W. 251, 4 Ann. Cas. 365; State v. Jackson, 128 Iowa, 543, 105 N. W. 51; Dechard v. State (Tex. Cr. App.) 57 S. W. 813; Owen v. State, 22 Okla. Cr. 419, 211 Pac. 1059. Com. v.

Schmunk, supra, appears to support this contention, and general statements in some of the other cases seem to support it.

There is slight division in the authorities. The general rule is that the crime of obtaining money or property under false pretenses is completed where the money or property is obtained and the venue is in the county where it was obtained by defendant, and not where the false pretenses were made. Thus where pretenses are made in one jurisdiction and money or property obtained thereby in another jurisdiction, the venue of the offense is in the latter jurisdiction. 11 R. C. L. § 36, pp. 854, 855, is in part:

"* * * Some of the cases proceed on the theory that where a person is indicted for obtaining a draft by representations made in one county, and it appears that the draft was mailed in another, the person from whom the draft was obtained having surrendered possession of it by placing it in the post office, addressed to the person obtaining the money, the post office department is deemed to be the agent of the person receiving it, in the same way that a common carrier would have been his agent if the draft had been given to it for delivery to him, and that therefore the defendant should be prosecuted in the jurisdiction where the draft was mailed. * * *"

It is further said:

"The general rule is that the crime of obtaining money or property by false pretenses is completed where the money or property is obtained, and that, if the pretenses are made within one jurisdiction and the money or property is obtained in another, the person making the representations must be indicted within the latter jurisdiction. The same rule is applicable to the obtaining of money by means of the confidence game. * * *

"Transmission by Mail. Where, induced by false pretenses, one transmits by mail to defendant money, drafts,

or other writings, such mailing is a delivery to the postmaster as the agent of defendant, to be forwarded to him, and the offense is complete where the letter is mailed, and is indictable at such place. * * *

"By statute in some jurisdictions the crime may be prosecuted in any county in which the false pretenses were made, although it may have been consummated in another county."

The latter statement is supported by State v. Briggs, 74 Kan. 377, 86 Pac. 447, 7 L. R. A. (N. S.) 278, 10 Ann. Cas. 904; Com. v. Wood, 142 Mass. 459, 8 N. E. 432; State of Utah v. Devot, 66 Utah, 319, 242 Pac. 395, 43 A. L. R. 532. See, also, annotations 43 A. L. R. page 545.

In addition to the general rule there is a further reason for sustaining the venue in Oklahoma county. Section 2730, Okla. Stat. 1931, provides:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof constituting or requisite to the offense, occur in two or more counties the jurisdiction is in either county."

This statute was under consideration and upheld by this court in the case of Troup v. State, 51 Okla. Cr. 438, 2 Pac. (2d) 591.

The case is affirmed.

DAVENPORT and CHAPPELL, JJ., concur.