# SUPREME COURT.

## THE PEOPLE *ex rel.* PATRICK GRATTAN agt. JESSE C. DAYTON, supervisor of the town of Watervliet, in the county of Albany.

*Assignment of unearned fees by a public officer — when valid — not against public policy.*

A declaration or admission of payment made by an assignee of unearned fees of a public officer, after he has parted with his interest therein, cannot affect the transfer; nor is it evidence of payment as against the second assignee or in favor of the assignor, unless the latter made it without notice of the transfer, even though he has possession of the assignment itself, as it is a transfer of a claim for fees earned and to be earned, and not an obligation of the assignor to pay money.

The fees of a public officer (justice of the peace), earned and unearned, are capable of assignment. Those unearned having no actual existence rest in expectancy merely, and the transfer is valid in equity as an agreement when they are brought into existence. The case of *Field* agt. *Mayor, &c., of New York* (6 *N. Y.*, 179) settles this.

Also, the same case is authority for holding that such an assignment is not void on the ground that it is against public policy.

The case is different from an assignment of a *salary* of a public officer not earned when made (*see the cases of Bliss* agt. *Lawrence, and Bliss* agt. *Gardner*, 48 *How. Pr. R.*, 21, *decided in the Court of Appeals*); because unearned *fees* depend for their allowance upon the performance of the service.

In the case of a salary the compensation is founded upon a general service which, from his possession of the office, the incumbent is supposed to have performed, and in the case of fees each item is to represent work actually done, for which, when completely finished, the law fixes the compensation — that which is not done is not allowed or paid.

The effect of granting the relator's application for a mandamus would be to take from another the money which the relator had placed in his hands; for, as between these parties, the assignment was executed — the relator consented that the assignee could receive the money. If public policy forbade the taking of the assignment, it forbade the relator to

make it. The parties are in *pari delicto*, and the law will leave both where it found them. Mandamus denied.

*Rensselaer Circuit, November,* 1874.

*John H. Colby & Martin I. Townsend,* for relator.

*Smith, Fursman & Cowen,* for respondent.

WESTBROOK, *J.* — This cause presents the question whether a writ of peremptory mandamus should issue requiring the respondent to pay over to the relator the sum of $1,805, which he has received in his official capacity as supervisor of the town of Watervliet, to pay bills which had been audited and allowed to the relator by the board of town auditors of that town, for services performed by him as justice of the peace of said town.

It was conceded upon the trial that, for services performed by the relator as justice of the peace of the town of Watervliet, there had been audited and allowed to him in the year 1873, the sum of $4,506.05, which money had been collected and paid over to the respondent. It was further conceded that the respondent had paid to the relator the whole of the sum thus audited except the sum of $1,805, which he has refused to pay.

The reasons which the respondent assigns for not paying to the relator the said sum of $1,805 are these: On the 6th day of May, 1873, the relator, for value received, by an instrument in writing duly executed by him, sold, assigned, transferred and set over " unto Andrew Alexander, of the village of West Troy, so much of any and all account or accounts, which I now have against the town of Watervliet, or against the county of Albany, as a justice of the peace or otherwise, or which may hereafter be audited to me, or in my favor by the board of supervisors of said town, as may amount to the sum of $1,805, and I hereby authorize the supervisors of said town, or the county treasurer of said

county, to pay said sum of $1,805 to said Andrew Alexander or to his heirs or assigns, from any audit or audits that may be made in my favor; and this instrument shall be their voucher for so doing." On the 7th day of May, 1873, Andrew Alexander assigned so much of the amount as had been transferred to him by Grattan "as shall amount to the sum of $1,620," to the respondent, and by the written assignment thereof, then made, declared that it was made "for value received," and authorized and empowered "the said J. C. Dayton to hold and retain said sum of $1,620 from said sum of $1,805, when the same shall be audited and allowed."

Andrew Alexander died June 13th, 1873, and the respondent claims to hold the sum of $1,620 for his own benefit, and the remainder of the $1,805 for the benefit of the estate of Alexander.

The relator claims: First, that shortly after he had made the assignment to Alexander, and without knowledge of the transfer to the respondent, he repaid to Alexander the money which it had been given to secure; and, second, that as to fees unearned it was void, because, being unearned, they were incapable of being transferred by assignment; and also because, as he alleges, public policy forbade the assignment by a public officer of fees to be earned in the discharge of his duties.

These questions will be examined in the order just stated:

First. Did the relator pay to Mr. Alexander, during his life, the sum which the assignment professed to secure?

There was no *direct* evidence given that the payment to Mr. Alexander was in *fact* made. No voucher or receipt indicating that it had been done has been presented; and no witness at the time present or pretending to have been present testifies to the fact. It is sought, however, to be established as follows: The assignment to Mr. Alexander was on file in the town clerk's office of the town of Watervliet. Mr. Bartholomew Grattan, a son of the relator, was the town

clerk of that town, and he testifies that on the 11th day of June, 1873, he met Mr. Alexander, deceased, and the relator, on the corner of Canal street and Broadway, in the village of West Troy; that Mr. Alexander then said, "Do you hold an assignment in your office for me, made by your father?" to which the witness answered "Yes." Mr. Alexander then further said, "Your father has paid me, deliver to him the papers." Whereupon, the witness testified, on the same day he delivered to his father the assignment — who produces the same upon the trial.

1. This evidence was not received as against Mr. Dayton. It was a declaration made by an assignor after he had parted with his interest, and upon well understood and settled principles, his admissions cannot affect the transfer. A payment to Alexander, Mr. Grattan having no notice of the transfer to Mr. Dayton, would have been good; but the admission of Mr. Alexander that it had been made, uttered after he had parted with his interest, cannot establish that fact.

Neither can the production of the assignment by the relator establish it. The instrument is not one which obligates the assignor to pay money, but is a simple transfer of a claim. The possession of a note by a maker may sometimes be *prima facie* evidence of its payment, because we infer that the holder would not have surrendered it without payment. This was an assignment of a running account, for fees earned and to be earned, on file in the town clerk's office, and the possession of this paper by the assignor proves nothing. But, granting the inference from the possession of the paper, which should ordinarily be drawn from that bare fact unexplained, to be what is claimed by the relator, that inference cannot be drawn in this case. The manner of obtaining the possession is explained. It was delivered to Mr. Grattan by the direction of Mr. Alexander (assuming now, for the sake of the argument, the truth of the relator's evidence), and as Mr. Alexander had, when such direction was given, parted

People *ex rel.* Grattan agt. Dayton.

with his interest, the delivery was unauthorized and invalid as against Mr. Dayton. We have already shown that the *direct* admission of Mr. Alexander, that he had been paid, is not evidence, and, consequently, the *indirect* admission of such payment, which is to be inferred from his direction to deliver the assignment, cannot possibly be. There is then no evidence admissible as against Mr. Dayton, establishing the payment to Mr. Alexander of all or any part of the moneys represented by the assignment.

2. The declaration and admission of Mr. Alexander, if made, are evidence against his estate, and if they establish the fact that the moneys represented by the assignment to Alexagder were paid to him by the relator, then the mandamus must issue for the difference between the $1,805 and the $1,620, the former being the amount specified in the assignment to Alexander, and the latter being the sum for which Mr. Alexander assigned to the respondent.

The fact of the payment is an affirmative one, which the relator must establish. The burden of proof is upon him. In considering the probabilities of the payment having been made, the obvious force of the absence of any memorandum, or voucher establishing it, and the secrecy of it (no person witnessing it), cannot be overlooked. The sum was large, $1,805, and I can scarcely conceive that a party accustomed to legal proceedings (and such the relator, a justice of the peace, is), would have paid so large an amount of money, taking no voucher, and in the presence of no witness. If the payment had been, in fact, made, it is but reasonable to expect better and more satisfactory evidence of the fact than a loose declaration in the presence only of a son, upon a public street. It is not the way business is ordinarily done, and if there was no evidence in the case tending to show that the payment was not, in fact, made, I should hesitate to find it as a fact, against a dead man's estate, upon the proof furnished to establish it.

But the payment was not, in fact, made, if the relator's

own declarations are to be believed. Mr. Henry Kelley, the deputy treasurer of the county of Albany, testified, that on the 30th day of June, 1873 (several days after the alleged declaration to the relator in the presence of his son), Mr. Grattan applied to Nathan D. Wendell, the treasurer of that county, for the loan of $600 upon his town and county bills to be audited, alleging that he had made an assignment of such accounts to Mr. Alexander, then deceased, and he needed that sum to take up the assignment, he having money enough to do it, if that additional amount could be obtained. On the faith of his statement the $600 was obtained from Mr. Wendell, and Mr. Grattan, on the 30th day of June, 1873, executed to Mr. Wendell a written assignment of his bills which were to be audited. The form of the assignment is identical with the one given to Mr. Alexander, except that the amount which the assignment secures is $600 instead of $1,805. In the fall of same year, Mr. Grattan repeated to Mr. Kelley the conversation he had held with him in June, and said he had used the money to pay the Alexander estate.

Mr. Kelley is an impartial and an intelligent witness. He has no interest to mislead, and it is scarcely possible that he can be mistaken as to the facts to which he testifies.

In view, then, of these reasons : First. That the burden of proof is upon the relator to establish the fact of the payment to Mr. Alexander. Second. That no voucher evidencing the payment is exhibited. Third. That no witness has been produced who saw it paid, and that such payment is claimed to have been made without the presence of a witness. Fourth. The unusual and suspicious mode of proof resorted to to establish it. And, Fifth. The declarations made to Mr. Kelley, which, to me, are satisfactorily proven. I decline to find that Mr. Grattan made any payment; and, on the contrary, I find, as a fact, that no such payment was made.

We are now brought to the legal questions raised by the relator : First. Were unearned fees capable of assignment,

People *ex rel.* Grattan agt. Dayton.

they having no existence at the time of the transfer? Second. Would such an assignment, if attempted, be contrary to public policy, and void?

The first of these objections is disposed of by the case of *Field* agt. *The Mayor*, *&c.*, *of New York* (6 *N. Y.*, 179), wherein the court of appeals hold, that " an assignment for a valuable consideration of demands, having, at the time, no actual existence, but which rest in expectancy merely, is valid in equity, as an agreement, and takes effect as an assignment when the demands intended to be assigned are subsequently brought into existence." This decision fully answers this objection; and it was followed by the general term of the supreme court of this district in *Stover* agt. *Eycleshimer* (46 *Barbour*, 84) judge INGALLS delivering the opinion, which has been affirmed in the court of appeals (3 *Keyes*, 620).

The second objection, that the assignment is contrary to public policy, is more formidable. The recent cases of *Bliss* agt. *Lawrence* and *Bliss* agt. *Gardner* (48 *How. Pr. R.*, 21), in the court of appeals, seemed to me, at first view, to be controlling in this case so far as the assignment covers fees for services not performed at the date thereof. Further reflection, however, satisfies me that they do not, for the following reasons:

First. Those cases were assignments of *salaries* of public officers, not earned when made. Grattan's assignment was of *fees*, the allowance of which depended upon the performance of the service. Whatever objections founded upon reasons of public policy might apply to the former, and which are so fairly stated by judge JOHNSON, they do not reach the latter. Judge JOHNSON says : " If such assignments are allowed, then the assignees, by notice to the government, would, on ordinary principles, be entitled to receive pay directly, and to take the place of their assigns in respect to the emoluments, leaving the duties as a barren charge to be borne by the assignors. *It does not need much reflection or observation to understand that such a condition of things could not fail*

*to produce results disastrous to the efficiency of the public service.*"

I do not see that this reasoning is applicable to the relator. There were three other magistrates in his town capable of performing the duties, which he has discharged. He was to be paid, not a *salary* for *holding* an office, but *fees* for services *actually* done. The audit was to be made for work performed, and without the performance, the claims could not be allowed. If he was remiss in his duties, others could perform them, and if performed, the public could not possibly suffer.

The case before me is more analogous to that of *Field* agt. *the Mayor &c.*, cited above, than to those more recent reported ones in *Howard*. The assignor in the Field suit seems also to have held an office, that of public printer to the corporation of the city of New York, and he made " an assignment of all bills that *might* become due to him for job printing, paper, or stationery, done or furnished the corporation of New York, to the amount of $1,500," after two other assignments specified, and previously made, had been paid. this assignment was enforced against the corporation, and the assignee allowed to recover.

The city of New York had an interest in the faithful performance of the assignor's (Jared W. Bell) contracts for printing, and the assignment of sums to become due, for printing to be performed, was just as objectionable on the ground that it was contrary to public policy, as the assignment in this case can be. If having received pay in advance would so impair the "efficiency" of Grattan as a justice of the peace as to make an assignment by him void, then the assignment by Bell could not have been upheld for he also, having parted with the compensation for work to be done, would have lost all his "efficiency" as the printer to the municipality. I am aware that this objection is not raised or discussed in the Field case, but a ground so obvious as this, if applicable, could not have escaped the attention of the counsel, and the court.

In the matter before me, as that to which reference has just been made, the public interests could not suffer, as the performance of the work was a condition precedent of the compensation. A performance not *barely* accomplished, as in case of an officer with a fixed monthly compensation, so as to make a demand of the payment of the salary only technically legal, but a faithful and complete performance of each item allowed. In this case, compensation and discharge of duty were *pari passu*, so completely and perfectly, that I cannot and do not regard the assignment of a salary as its parallel. Then a halting and indifferent service may suffice to draw it, but Mr. Grattan could not receive a dollar, until a sworn board had determined the completeness of each act, for which a charge was made. In the one case, the compensation is founded upon a general service, which, from his possession of the office, the incumbent is *supposed* to have performed, and in the other each item is to represent work actually done, for which, when completely finished, the law fixes the compensation. That which is not done is not allowed or paid.

Seeing the clear difference to which I have alluded in the cases, and in the court of appeals having pronounced valid an assignment of moneys to be earned by a public printer, which I deem to be more analogous to this than those in regard to salaries; and further believing that "the dignity of an office" is largely upheld by the observance of honor and integrity of its possessor, I decline to hold this assignment void on the ground that it was against public policy.

In reaching this conclusion it is not to be denied that some of the cases in England, referred to by judge JOHNSON, would cover this; but the actual decision only reaches the transfer of an unearned salary. No allusion is made in the opinion to *Field* agt. *The Mayor &c.*, which therefore is not overruled. The cases are to be harmonized, if possible, by the subordinate tribunal, which while both are left for its guidance must respect each. This can be done by following the cases in

People *ex rel.* Grattan agt. Dayton.

*Howard* when the question arises upon the sale of an un-
earned *salary*, and adhering to sixth of New York when
unearned *fees* are assigned, and where only that which has
been in good faith earned can be collected.   There are reasons,
as we have endeavored to show, applicable to an assignment
of an unearned salary, which lose their force when applied to
one of unearned fees.   The former has been pronounced invalid
by one court of dernier resort, while the latter, it seems to me,
has been sustained by the same court in a parallel case, and
that precedent I take for my guidance.

Second. I do not think this objection is available to the
relator.   The effect of granting the mandamus which he
asks would be to take from another the money which he,
the relator, has placed in his hands.   As between these
parties, I find this assignment an executed one.   The relator
consented that Alexander or his assigns could receive this
money.   The respondent, as assignee, has it in his possession.
If public policy forbade the taking of the assignment, it
forbade the relator to make it.   The parties are in *pari
delicto*, and the law will leave both where it found them.   If
this assignment was void, the relator could have had it so
declared before the money was received.   He did not do so,
however, but permitted Mr. Dayton to appropriate the
money under it; and by no notice or objection, made prior
to its actual appropriation under the assignments, was its
complete application in extinguishment thereof sought to be
presented.   The agreement of the parties is executed, the
money has been applied with the consent of the relator, and
the law will leave it, where the parties have voluntarily and
without dissent appropriated it.

Third. The relator has a remedy by action to recover
this money, if illegally withheld from him by the respondent.
To grant this suit would work such great injustice, that I
decline to order its issue.   I fully concur in the view which
judge CLERKE, has taken in *The People ex rel. the Com-
missioners of Emigration* agt. *The Supervisors of Rich-*

People *ex rel.* Grattan agt. Dayton.

*mond County* (22 . *How.*, 275), of the discretion of this court in granting or witholding the writ of mandamus.  He there likens it to the power which a court of equity exercises in the enforcement of contracts.   The discretion of the court, it is true, is not arbitrary, but governed by precedents and decisions, but still in granting or withholding this remedy, it " exercises a wider latitude than in ordinary common-law actions," confining its decision to the circumstances and facts upon which the application is founded.   These facts and circumstances proving this application to be most inequitable and unjust, the peremptory writ is also for this reason refused.  The result of my examination is, that the peremptory mandamus asked for should not be granted, but that the same should be, and is hereby denied.