CASE 51—EQUITY—FEBRUARY 19, 1881.

## Field v. Chipley, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A contract by which the clerk of the Louisville chancery court trans-- fers and assigns to a trustee for the benefit of appellant, in considera-- tion of a debt due him, all the fees and emoluments of his office in. the future, until the debt is paid, with conditions to pay deputies, &c.,. is void.

Field v. Chipley, &c.

.2. It is against public policy that such contracts be enforced.

3. The Auditor has, under the statute, the right to look to the clerk for taxes on suits collected by him. The trustee will not be recognized as the person to receive them.

BIJUR & DAVIE FOR APPELLANT.

1. A clerk of a court can make a valid assignment of his fees to become due.

.2. The reservations in the contract for the benefit of appellee and his creditors are not binding upon appellant, appellee being the debtor and repudiating the contract. (Combs v. Brashears, 6 J. J. Mar., 631; High on Receivers, sec. 22; Clark v. Tilley, 31 Ind., 121; Ciples v. Blain, Rice's Eq. Rep., S. C., 60; 2 Allen, 40; Benjamin on Sales, 78; Parsons on Con., vol. 1, 523; Whitehead v. Root, 2 Met., 586; 11 Iowa, .572; 15 Ib., 284; 40 Penn., 276; 2 Selden, 179; 18 Pick., 168; 5 Gray, 49; Brackett v. Blake, 7 Met., Mass., 335; 2 Allen, 541; 2 Gray, 565; 28 Ver., 20; 15 Wisconsin, 75; Merriwether v. Herman, 8 B. Mon., 164; 5 Ib., 142; Speed v. Brown, 10 Ib., 110; Rodman v. Mussel-man, 12 Bush, 354; 2 Russell & Mylne, 35; 10 Simons, 542; 27 Law Jour. Ch'y, 592; 3 Gifford, 467; 10 Beavan, 491.)

GOODLOE, ROBERTS & HUMPHREY FOR APPELLEE.

A clerk cannot assign fees to become due for services to be performed in the future. The contract is against public policy, and is void. (Forward v. Proctor, 9 B. Mon., 124; Phillips v. Winslow, 18 Ib., 431; Ross v. Wilson, 7 Bush, 32; 9 Ib., 318; Vinton v. Hallowell; Hutch-inson v. Ford, 9 Bush, 318; Gen. Stat., chap. 81, sec. 1, p. 681; Combs v. Brashears, 6 J. J. Mar., 6; Petty v. Roberts, 7 Bush, 419; 7 Mon., 10.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

S. F. Chipley, the clerk of the Louisville chancery court, being indebted to Neill B. Field in the sum of about $28,000, evidenced by several promissory notes, for the purpose of securing its payment entered into an agreement with Field by which Chipley transferred and delivered to John G. Walker "*all the demands* and claims due to him, the said Chipley, as fees of his said office, which have accrued between the 1st of August, 1877, and the 27th of February, 1878, and further agreed to assign to the said Walker for a like purpose all claims due to him, the said Chipley, as fees

of his said office, which shall accrue to him hereafter, or· from the date of the agreement until the debt of Field is. paid," the same to operate as a transfer and assignment of such claims, demands, and fees as they accrue. Walker,. as trustee, was designated as the collector for the parties, and at the end of each month the trustee is to pay over to· the said Field the collections made, except as follows:

He is to pay to the deputies of said clerk, as salaries, and) for the other expenses of said office, $330; to S. F. Chipley,. the clerk, $225; to the Farmers and Drovers' Bank, $250 on a debt of $1,300 due that bank; to the Auditor of Public· Accounts, until the debt of said clerk for back taxes is paid,. $115. For making transcript of records the trustee is to pay the amounts due from the office to Benj. F. Field and George McGowan. The sums collected by said Walker as· taxes on suits hereafter brought shall be kept entirely sepa- rate from said account, and shall by him be paid over to the· state, and the said Field is given no right thereto.

Chipley further agrees to make Field a power of attor- ney, giving him full power to collect or appoint collectors in Chipley's name, if Field sees proper to do so, and to distrain for the same in said Chipley's name where it is a proper· cause for distraint. This last clause applies to fees already delivered to Field. The trustee is to make a monthly state- ment of his accounts, and the books of the office are at any time to be open to the inspection of said Field's agents or counsel for the purpose of investigating and overlooking the conduct of said trust.

The appellant Field instituted this action in equity in the· Louisville chancery court, alleging that the trustee Walker·· had resigned his office on the 10th of February, 1879, and' that Chipley, the defendant, had refused to have another··

trustee appointed in his stead; that Chipley is insolvent, and is proceeding to collect the fees of the office without applying the proceeds to the payment of his debt. He asks for a temporary injunction restraining the appellee from collect-. ing his fees, and the appointment of a receiver for that purpose, and that the collections be applied in the manner agreed on by the parties. The chancellor, on the hearing below, adjudged the appellant entitled to the fees already assigned and delivered, but dismissed the action as to appellant's claim to the fees of the office to become due, or that might accrue after the date of the contract. The judgment below is made to rest on two grounds: first, it is an agreement to sell something not in existence; second, that the contract is against public policy.

As to the first question raised, counsel for the appellant has referred to several authorities sustaining the validity of such an agreement, but the whole current of authority in this state is opposed to such a doctrine. The case of Whitehead v. Root, reported in 2d Metcalfe, in no manner sustains the position assumed by counsel, and instead of determining that the title to the whisky would vest in the purchaser in that case as the whisky was made, a contrary conclusion was reached, by which the appellant was confined to a recovery in damages for the failure of the appellee to comply with his contract. Root & Co., in that case, being distillers, sold to Whitehead & Co. ten thousand dollars' worth of whisky at twenty-one cents per gallon, to be delivered within twelve months from the date of the contract. The whisky was not made or in existence at the time, and the court below held, for that reason, the contract invalid, or overruled a demurrer to an answer presenting such a defense. This court in that case recognized the distinction

between existing contracts for the future delivery of prop-
erty and sales of like property.   In the latter instance, the
title passes, and where there is only an agreement to sell,
and a violation of that agreement, the party injured can
only recover such damages as he may have sustained in con-
sequence of the breach.   The cases of Hutchinson v. Ford,
9th Bush; Newcomb v. Cabel, 10th Bush; Moss v. Meshew,
8th Bush, recognize this rule.   Waiving, however, the con-
sideration of this question, the present contract should be
declared void, as being against public policy and in effect a
sale of the appellee's office.

Section 1 of chapter 81, General Statutes, provides, that
"no office or post of profit, trust or honor, under this Com-
monwealth, whether civil or military, legislative, executive,
ministerial, or judicial, nor the deputation thereof, in whole
or in part, shall be sold or let to farm by any person holding
or expecting to hold the same.   The person selling or let-
ting, and the person buying or recovering, or with whose
knowledge the same has been bought for him by another,
shall be disqualified from holding such office or post, or the
deputation thereof, and, upon conviction, shall be expelled
therefrom."   The second section reads, "except as to bonds
of indemnity from a deputy and his sureties given to a
sheriff, sergeant of the Court of Appeals, clerk, or marshal,
every contract or security made or obtained in violation of
the preceding section shall be void."   While the facts evi-
denced by the contract between the parties are not sufficient
to subject them to the severe penalties imposed by the stat-
ute, the chancellor, when asked to enforce such an agree-
ment, conceding that he can exercise such a power over the
subject-matter, will not close his eyes to the contents of the
agreement, or the consequences that must necessarily follow

from the recognition of appellant's right to demand that every order and record in the office of his clerk shall always be open to the inspection and investigation of the appellant, his trustee, and a receiver, if one should be appointed by the court. Assuming that the consideration for which this contract was executed by the clerk was for money loaned, and this is not questioned, the entire proceeds of the office has been turned over to the appellant, and the appellee, the clerk, is performing the duties of the office under a stipulated salary, to be paid by the appellant or his trustee, with his subordinates paid in like manner, and such salaries as have been agreed on by the appellant and the appellee.

The appellee is to receive $225 per month from the proceeds of his office, worth from ten to fifteen thousand dollars per annum, an office that of necessity requires the employment of many subordinates, their presence and labor being indispensable to the proper administration of justice. These employés are to be paid such sums as the trustee may see proper to pay them, as $300 is the aggregate sum per month for their services and the expenses of the office. These expenses must embrace fuel, lights, &c., all of which are to be purchased with the funds that are intrusted to the trustee, and if payment is denied by him for these expenses or the salaries of employés, the doors of the clerk's office are closed, and the chancellor rendered powerless to act, by reason of the intervention of the trustee selected by the parties to this contract. Besides, the Auditor of Public Accounts finds, when calling on the clerk for taxes long since due on suits, &c., that this public money is in the possession of a trustee, who is required to pay into the treasury as much as $115 per month, and the clerk, whose duty it is to retain the custody of this public money, has surren-

dered all control over it.   This contract makes the appellee·
the deputy of the appellant, with the obligation resting on
the former to discharge all the duties of the office for the
sum of two hundred and twenty-five dollars per month, his
employés and the state to look to the appellant or the trus-
tee for all the moneys to which they or either of them may·
be entitled.   The chancellor will not permit his clerk to
surrender such rights as are essential to the proper discharge
of the duties of the office, and we have been cited to no·
case where a like contract has been enforced.

In the case of Combs v. Brashear, 6 J. J. Marshall, Luff,
the deputy, was entitled to a certain part of the profits.
by reason of his services as deputy sheriff.   In the case of
Cheek v. Tilley, reported in 31st Indiana, the deputy clerk
was entitled, by contract, to share the emoluments of the
office, and in Rice's Equity Reports (South Carolina) the·
contract was of a similar nature, and the litigation origi-
nated as to the right to the fees after the principal clerk.
had made an assignment of his effects and retired from·
office.   This class of cases has been held not to be in con-
travention of public policy, and while the chancellor might:
even decline to appoint a receiver in behalf of a deputy·
for services rendered in his own court, still such cases bear
no analogy to the one being considered.   While the fact of·
the appellee having appropriated the proceeds of his daily
labor, both physical and mental, to the payment of appel-
lant's demand may afford no reason for denying the latter
relief, if by the agreement, as in this case, the public officer
has surrendered such control over the future emoluments of
his office as to deprive him of the means of procuring the·
necessary employés to transact the business of the office, or·
to defray the necessary expenses, it becomes. at. once the·

duty of the chancellor to declare such contracts null and void. The contract in this case goes to a greater extent. even than depriving the clerk of the means of defraying the necessary expenditures of the office, but has placed the funds of the state in the hands of the trustee, and beyond. his control. If such a contract was valid at law, and for its violation damages could be recovered on account of a breach, still the chancellor, when asked to enforce its specific performance, in considering the inconvenience resulting from such a judgment, and its effect upon the public interests, should not hesitate to refuse relief.

If this contract can be enforced, it opens the door for speculation on the public offices of the state under the guise of a contract for the loan of money, and while the loan in this case may have been in good faith, and for no such purpose, the recognition of the validity of such agreements would prove so detrimental to the public interests that the chancellor should disregard them. The judgment is therefore affirmed

Judgment affirmed.