THE INHABITANTS OF THE TOWNSHIP OF WAYNE, IN PASSAIC COUNTY, v. WILLIAM CAHILL.

1. A township committee has no power to bind a township by an acceptance of an order drawn upon the committee by a road overseer in favor of a third person, directing the payment of money to be appropriated in the future to a road district.

2. An attempted assignment of such moneys is void upon grounds of public policy.

3. No action will lie against the inhabitants of a township for the recovery of moneys for work done upon roads in advance of an appropriation, although the appropriation be afterwards made.

On *certiorari* to Passaic Common Pleas.

William Cahill brought an action in the Paterson District Court to recover the sum of $32.40, the balance of an order for $174.40 given to him by John Ackerman, a road overseer in the township of Wayne.

The complaint set out that the township was indebted to Ackerman in the sum of $174.40, and that Ackerman, being indebted to Cahill in this sum, made an order in writing to Cahill for this amount, directed to the township committee of Wayne township, and that Cahill presented said order to said

Township of Wayne v. Cahill.

defendants, who by the said committee accepted the said order and promised to pay the said sum; that the defendants paid $142, leaving $32.40 unpaid.

The court found from the evidence submitted the following facts to be proven:

1. That the order upon which the suit was founded was given to the plaintiff by John Ackerman, overseer of one of the road districts of Wayne township, about the time it bears date.

2. That the plaintiff advanced to John Ackerman $174.40 in cash, for which the order was given.

3. That at the time he gave the order, Ackerman, as overseer, had done work, &c., on the highways in his district to the amount of said order, but that there was at that time only $142 appropriated to the district of which he was overseer, the balance being in excess of the appropriation.

4. That the township committee of the following year, afterwards, in August, 1884, paid Ackerman the balance of his said bill.

5. That the township committee never, by any official vote of the committee, accepted or agreed to pay to plaintiff his order or any part thereof.

6. That the sum of $142 credited on plaintiff's order was paid by the township collector to Ackerman by check (in evidence), and that check was by Ackerman endorsed over to Cahill, the plaintiff, at a meeting of the township committee regularly held.

7. That the township clerk drew the order at the request of Ackerman.

8. That the evidence shows, and the court therefore found, that while the township committee never by any formal vote accepted said order, yet that the township clerk and two of said committee, being aware of the existence of the order in the hands of the plaintiff, by their conduct as disclosed in the testimony, made a contract of acceptance of said order, and that as matter of law the inhabitants of the township are bound by such contract of acceptance, and are liable to pay

the amount of the order to the plaintiff. Judgment for plaintiff. Defendants appealed.

It was agreed by counsel that the judge's notes of the evidence, state of demand, copy of the record and summons, with copies of the exhibits and the foregoing statement of the findings, shall be taken as a state of the case.

Judgment was entered for the plaintiff, and upon appeal to the Passaic Common Pleas the judgment was affirmed.

This writ brings up the last judgment and the accompanying record.

Argued at June Term, 1886, before Justices Dixon, Reed, and Parker.

For the prosecution, *J. W. Griggs.*

For the defendant, *Frank E. Pellett.*

The opinion of the court was delivered by

Reed, J. The right of action by Cahill rests upon an order drawn in his favor by Ackerman upon the township committee of Wayne township.

By virtue of what he contends was an acceptance of such order by the township committee, he claims that an obligation rests upon the inhabitants of the township to pay him the unpaid balance of this order. If the acceptance of the order by the committee could create a privity between the plaintiff and the defendants, yet I think the case fails to show the existence of any facts from which the existence of an acceptance by the committee as a body, can be inferred. It is found by the trial judge that the township committee never, by any official vote, accepted or agreed to pay to the plaintiff his order or any part thereof.

The court below, however, held that the township clerk and two of the committee, being aware of the existence of the order, by their conduct as disclosed by the testimony, made a contract of acceptance.

Now, so far as the clerk's conduct is involved, it is clear that it could in no manner bind the township. He is only the recording officer of the committee. *Pamph. L.* 1878, *p.* 376.

So far as the action of the committee is shown, the only testimony that could be forced into the service of the plaintiff is his own statement as follows :

" The township committee was in session, and Mr. Vail and others of the town committee, and Torbet, said that they would pay the balance as soon as they got the money." Torbet was the clerk.

The witness is speaking of the time when he and Ackerman were present and the committee refused to pay Ackerman's entire bill as overseer, because his bill exceeded by $32.40 the amount appropriated to his district for that year. They paid at that time the amount of the appropriation by a check drawn, not in favor of the plaintiff, but to Ackerman, the overseer. It was at this time, on this occasion, they said they would pay the balance as soon as they got the money.

This testimony certainly raises no implication that they would pay the balance to any person other than the one to whom they paid the check. Nor can the fact that the committee had knowledge of the existence of the order or knew that the check was to be endorsed or was at once endorsed by Ackerman to the plaintiff, imply an acceptance of the order. It was no concern of theirs what disposition Ackerman chose to make of the money received by him. Mere knowledge of the order without an acceptance imposes no new privity upon the debtor which can be recognized in an action at law. I have looked through the testimony, but I have been unable to discover anything in the conduct of the committee which will afford a groundwork for the conclusion that they promised to pay Cahill or accepted the order.

But even had it satisfactorily appeared that the committee had recognized the substitution of Cahill for Ackerman as their creditor by an acceptance of this order, I am convinced that there would exist a radical obstacle in the way of the

plaintiff's recovery. This difficulty, in my judgment, would lie in the fact that the attempted assignment of any portion of the money which should in the future be apportioned to that district would be opposed to public policy.

This would be so upon the well-settled, common law principle which avoids any assignment of the fees or salary of an officer which are yet to be earned.

The reason upon which such rule of public policy is grounded is that the remuneration which the law provides for the officer is supposed to be essential to support the dignity of the office, to maintain him without resorting to other employments, and to supply an inducement for a sedulous performance of his official duties.

The following cases illustrate the rule: *Liverpool* v. *Wright*, 28 *L. J.* (*N. S., Ch.*) 868 ; *Arbuckle* v. *Cowtan*, 3 *B. & P.* 321 ; *Field* v. *Chipley*, 79 *Ky.* 260 ; *Bliss* v. *Lawrence*, 58 *N. Y.* 442.

In the opinion of Judge Johnson in the last-mentioned case, the English cases are collated and discussed.

Now, it is true that the money raised by taxes for road purposes and apportioned to the several districts can hardly be regarded as perquisites of the overseers. But I think that a glance at the purpose for which the devotion of these moneys is made will show at once that the same principle of public policy which forbids the diversion of unearned fees from the officer who is by law entitled to receive them will also forbid the diversion of any of these moneys which are to be apportioned to these officers, or, more accurately, to the districts of which they are officers.

It is observed that the part of the order for which this action is brought is for money which might be apportioned by the township committee in any future year to the district over which Ackerman was overseer. By the scheme provided by the Road act, as interpreted in the case of *Callahan* v. *Township of Morris*, 1 *Vroom* 160, this money is to be kept on hand to enable the overseers to do or have done the necessary work upon the roads of the several districts. It is a fund provided by law to recompense the overseer for his own

labor and to enable him to purchase materials or to hire teams, wagons and men in the execution of his official duties. It therefore was a fund the possession of which or the right to receive which was certainly as essential to the effective execution of the duties of the overseer as is the right to receive personally a salary to any other officer.

Indeed, the present case affords a much stronger instance of possible injury to the public service, for here the fund was more intimately interwoven into the actual execution of official duty. It was not merely the means of paying the officer, but the means furnished with which he was to perform his functions as such officer.

Therefore, I conclude that any attempt to assign a future appropriation of road moneys is void.

But there is another phase of the case which seems fatal to the plaintiff's claim. The promise of the committee to pay Ackerman the amount of his bill for work done by him in the year 1883, out of the general appropriation of the succeeding year was, upon another ground, invalid. The committee had no power to make such promise. The overseer had no authority to do work in 1883, for hire in excess of his appropriation for that year. If he chose he could do so relying upon the custom of committee to allow for such work.

But no liability at law would rest upon the township to pay for such labor. Nor would the fact that the committee afterwards paid the sum to Ackerman, matter. The plaintiff's right must rest upon a legal liability of the township to pay it, and the fact that the committee chose to pay it goes no way in showing that the plaintiff could have sued for it.

There are instances, also, where a payment by public officers may be made within their discretion and such payment will not be interdicted, yet where no action at law would have been successful in compelling payment. *State, Lewis, pros.,* v. *Freeholders of Hudson,* 8 *Vroom* 254.

Again, the facts of this case bring it within the rule announced in *Callahan* v. *Township of Morris, supra,* that for work done in advance of an appropriation, even although the

appropriation be afterwards made, no action will lie against the inhabitants of the township. The conclusion then arrived at was that the remedy was probably by writ of *mandamus* against the committee.

The judgment should be reversed.