Crew, J.
The primary and controlling question arising upon this record, is whether the contract sued on in this case is a valid contract that will be enforced, or whether, it being a contract to devote and apply the unearned fees of a public office to the payment of the joint debt of the promisor and promisees, such contract is illegal *353 and void, because contrary to, and against public policy. As appears from- the above statement of facts: At the general election held in November, 1891, Wesley Q. Barney was elected treasurer of Defiance county, Ohio, for the full terrh of two years, commencing on the first Monday of September, 1892. Before entering upon the duties of the said office Barney gave bond in the penal sum of one hundred and twenty-five thousand dollars, payable to the state of Ohio, and conditioned as provided by law. Plaintiff in- error, and the defendants in error, were sureties on said bond. In November, 1893, Barney was re-elected to said office of county treasurer, and again qualified and entered upon the discharge of his duties on the first Monday in September, 1894, and continued in said office until about the 27th day of November, 1894, at which time he resigned. On December 1st of the same year, the commissioners of Defiance county appointed the plaintiff in error, George C. Serrill, treasurer of said county to fill the vacancy occasioned by the resignation of Barney ; and by virtue of his said appointment, Serrill thereby became ex officio treasurer of the city of Defiance. Serrill accepted said appointment and executed his official bond in the sum of one hundred and twenty-five thousand dollars, with defendants in error as sureties thereon. After the resignation of Barney, it was discovered that he had, during his first term, misappropriated about nine thousand dollars of the public funds which came into his hands as treasurer, and the sureties upon his official bond were required to, and did, pay into the county treasury of Defiance *354 county the amount so by him misappropriated. In order to obtain said sum of nine thousand dollars wherewith to make good the amount so wrongfully appropriated by Barney as treasurer, the .plaintiff in error and the defendants in error, borrowed said sum from certain banking institutions, executing their joint and several promissory notes therefor, which notes, at the time of the appointment of George C. Serrill treasurer, were outstanding and unpaid. The plaintiffs below, by way of particular statement of the consideration, terms and conditions of the oral contract made and entered into between them and George C. Serrill, upon which they seek to recover in this action, aver in their amended petition: “that upon the appointment of said defendant to fill said vacancy in the said office as aforesaid, the said defendant solicited these plaintiffs to become his sureties upon his official bond as such county treasurer under said appointment, and then and there offered and proposed to the' plaintiffs that if they would sign the said official bond and become his sureties thereon, the said defendant would forthwith upon the execution and acceptance thereofK enter upon the discharge of the duties of such office and of said office of city treasurer of the said city; and in consideration of the said plaintiffs becoming sureties upon his said official bond, would use and employ all the fees, salary and emoluments of said office received by him as such county treasurer and as treasurer of the said city in excess of ninety-one. dollars and sixty-seven cents ($91.67) per month in the discharge of the said joint obligations of the said plaintiffs and said defendant *355 given by them as aforesaid in evidence of moneys by them borrowed and otherwise procured and paid over to make good the said public moneys misappropriated by the said Barney as such treasurer as aforesaid.
“Plaintiffs say that they then and there accepted said offer and proposition of said defendant, and in consideration that the said defendant use and employ all the said fees, salary and emoluments received by him during his incumbency in said office under such appointment on account of his services as such county treasurer, and as such city treasurer, in excess of the said sum of ninety-one dollars and sixty-seven cents ($91.67) per month, in the payment of the said joint obligations of the said plaintiffs and said defendant and in consideration of the said promises and agreements of the said defendant so to do, the said plaintiffs signed the said bond of said defendant in the sum of one hundred and twenty-five thousand dollars ($125,000).”
It will be observed that the above contract, in plainest terms, is a contract for the sale and application of the unearned fees or salary of George C. Serrill, as treasurer of Defiance county. It is in form, and by its express provisions, an undertaking and promise on his part, to pledge, and pay over for the benefit of his co-obligors, all the fees, salary and emoluments of said office that may thereafter be received by him, in excess of $91.67 per month, or eleven hundred dollars per year. The fees and salary of said office, as shown by the record, amounted to about two thousand nine hundred dollars per year. The English authorities *356 seem to be unanimous in holding that such contracts are absolutely null and void as being against public policy. And such we think is the American doctrine, clearly established by the overwhelming weight of authority. In Bliss v. Lawrence, 58 N. Y., 442, a leading case on this subject, where many authorities, both English and American, are cited and reviewed, the court says: “The controlling question in these cases is that of the lawfulness of an assignment, by way of anticipation, of the salary to become due a public officer. * * * ■ Salaries are, by law, payable after work is performed and not before, and while this remains the law it must be presumed to be a wise regulation and' necessary, in the view of the law-makers, to the efficiency of the public service. The contrary rule would permit the public service to be undermined by the assignment to strangers of all the funds' appropriated to salaries. It is true that, in respect to officers removable at will, this evil could in some measure be limited by their removal when they were' found assigning their salaries; but this is only a partial remedy for there would still be no means of preventing the continued recurrence of the same difficulty. If such assignments are allowed then the assignees, by notice to the government, would on ordinary principles be entitled to receive pay directly and to take the place of their assignors in respect to the emoluments, leaving the duties as a barren charge to be borne by the assignors. It does not need much reflection or observation to understand that such a condition of things could not fail to produce results disastrous to the efficiency of the public service. * * * The *357 substance of it all is, the necessity of maintaining the efficiency of the public service by seeing to it that public salaries really go to those who perform the public service. To this extent, we think, the public policy of every country must go to secure the end in view.” Mechem in his work on Public Offices and Officers, .at Section 874, says: “While the compensation already earned by a public officer may validly be assigned by him, it is settled by a clear preponderance of authority that an assignment of future compensation not yet earned, whether payable by salary or fees, is opposed to public policy and void.” To the same effect is Throop on Public Officers, Sections 42 and 43. The validity of an assignment of unearned fees was the subject of consideration in Schloss v. Hewlett, 81 Ala., 266, and it was there held that the contract of assignment was against public policy and void, the court sajdng: “It is easy to see how great abuses would follow if such transfers were permitted. Not only would there exist a constant temptation to anticipate future earnings under the stress of present financial pressure at usurious rates of discount, but when completed one of the strongest incentives to industrious exertion — the expectation of pecuniary reward in the near future —would be gone.” In Shannon v. Bruner, 36 Fed. Rep., 147, it was held that an assignment by a master in chancery of his unearned fees was void as being against public policy. Mr. Justice Brewer, speaking for the court, said: “Now, can an officer make an assignment in advancé of his fees or his salary? The law is very clear that he can not. Public policy has affirmed the necessity of securing *358 to every public officer, when earned, his fees or his salary, unhindered by any present legal attack, or any previous voluntary assignment. There are many cases, both in England and this country, affirming the necessity of upholding such public policy. It is familiar law that you can not garnish an officer’s salary; and the same public policy which forbids that, prevents him, before he has earned his salary or done the work which entitles him to the fees, from making a voluntary transfer of them.” A like view of the rule and doctrine was adopted and applied in the following well considered cases. Bowery National Bank v. Wilson et al., 122 N. Y., 478; The State v. Williamson, 118 Mo., 146; Bank v. Fink, 86 Tex., 303; Stevenson v. Kyle, 42 W. Va., 229; Field v. Chipley, 79 Ky., 260; Bangs v. Dunn, Auditor, 66 Cal., 72; King v. Hawkins, Auditor, 2 Ariz., 358; State v. Barnes et al., 10 S. D., 306; Schwenk v. Wyckoff, 46 N. J. Eq., 560; Elwyn’s Appeal, 67 Pa. St., 367. See also, Mechem’s Public Offices & Officers, Sec. 874; 9 Cyc., 495. The cases of Brackett v. Blake, 7 Metcalf, 335; Mulhall v. Quinn et al., 1 Gray, 105, and Macomber v. Doane et al., 2 Allen, 541, are sometimes referred to as announcing a contrary doctrine, but in neither of these cases was the rule of public policy suggested to, or considered by, the court. The only cases we have found that seem to sustain as valid an assignment of unearned fees or salary, are State, ex rel. Bank v. Hastings, 15 Wis., 75, and The People, ex rel. v. Dayton Supervisor, 50 How. Pr. Rep., 143. The latter case has since been directly overruled by the Court of Appeals of New York in *359 Bowery National Bank v. Wilson, supra; hence the case of Bank v. Hastings, stands alone in its support of the validity of such contract of sale or assignment. In obedience, then, to the clear weight of authority, and to what we conceive to be a sane and sound rule of public policy, we are constrained to hold that the contract sued on in the present case is illegal and void and ought not to be enforced. The demurrer to the amended petition in this case should have been sustained by the court of common pleas, but the same having been overruled, and the cause having been submitted to said court upon the pleadings and evidence without the intervention of a jury, there was no error in the finding and judgment of said court that, “the alleged agreement between the plaintiffs and the defendant, set up in plaintiff’s amended petition as constituting plaintiff’s cause of action, is against public policy and void,” and dismissing said amended petition.

Judgment of the circuit court reversed and that of the common pleas affirmed.

Shauck, C. J., Price, Summers, Spear and Davis, JJ., concur.